IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HOUSE OF BRYANT PUBLICATIONS, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> A&E TELEVISION NETWORKS, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 3:09-0502 <br> ) Judge Trauger <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant, A&E Television Networks ("AETN"), pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.01(a), respectfully submits this Memorandum of Law in support of its Motion to Dismiss for failure to state a claim. As demonstrated below, Plaintiff's claims should be dismissed in their entirety because AETN's use of footage from the University of Tennessee-Knoxville ("UTK") football stadium during a game, which includes twelve seconds of ambient stadium noise including the marching band playing "Rocky Top" in a forty-eight minute documentary television program, is a fair use as a matter of law.

**FACTUAL BACKGROUND**

Because this matter comes before the Court on Defendant's Motion to Dismiss, AETN must take the allegations of the Complaint – but not Plaintiff's conclusory assertions – as true for the purposes of this Motion only. Following this standard, Plaintiff's claim of copyright infringement fails as a matter of law under the fair use doctrine. The following factual background is taken from the Complaint and the materials explicitly referenced therein.

1

Plaintiff, House of Bryant Publications, L.L.C. (hereinafter "Plaintiff" or "House of Bryant"), purports to be the entity charged with exclusive administration of licensing for the musical composition "Rocky Top," written by Felice and Boudleaux Bryant in 1967.[1] Compl. ¶ 9. "Rocky Top" is an official state song of the State of Tennessee (T.C.A § 4-1-302) and has been recorded by a variety of artists, including the Osborne Brothers, the Everly Brothers, Lynn Anderson, Dolly Parton, and Conway Twitty. Compl. ¶ 7.

Plaintiff filed this lawsuit on June 3, 2009, accusing AETN of infringing its copyright in the song "Rocky Top."[2] In the Complaint, Plaintiff alleges that AETN uses a "lengthy and recognizable"[3] portion of the song "Rocky Top" as played by the UTK marching band in Neyland Stadium during a home football game and which was incorporated in an episode of the television documentary series *City Confidential* entitled "Knoxville, TN: Phantom Hitman" (hereinafter the "Program") without obtaining a synchronization license or other license. Compl. ¶¶ 11, 13, 15. Plaintiff further alleges that it actively licenses "Rocky Top" for live performance and synchronization in audio-visual works, and that the University of Tennessee has a blanket license to publicly perform the song. Id. at ¶ 10. Plaintiff goes on to allege that because AETN some time prior to the Program purportedly sought, but was denied a license for, synchronization of "Rocky Top" in a separate program, the subject of which Plaintiff did not approve, AETN's use in the Program demonstrates willfulness. Id. at ¶ 17.

---

[1] Plaintiff does not attach proof of copyright registration or renewal, or any proof that it has the right to sue for copyright infringement on behalf of the copyright owners. It is not entirely clear whether Plaintiff even has standing to bring these claims. *See* Original Appalachian Artworks, Inc. v. Schlaifer Nance & Company, Inc., 679 F. Supp. 1564 (N.D. Ga. 1987) (holding that exclusive licensing agent lacks standing to bring an action for copyright infringement). Nevertheless, for the limited purpose of this Motion only, AETN will assume *arguendo* that Plaintiff could prove standing.

[2] This lawsuit does not include a claim of copyright infringement of any sound recording of "Rocky Top." Sound recordings and underlying musical compositions are separate works with their own distinct copyrights. *See* 17 U.S.C. § 102(a)(2), (7).

[3] This is the type of "conclusory statement" to which the Court is not required to give any weight or otherwise accept as true. *See* Part A, *infra*.

30000020

Although the Program is referenced throughout the Complaint, and the use of the song "Rocky Top" in the Program forms the factual basis of the Complaint, Plaintiff elected not to exhibit it to the Complaint. Nevertheless, the Court may consider the Program in ruling upon this Motion to Dismiss. *See* Part A, *infra*; *see also* Defendant's Request for Judicial Notice simultaneously-filed herewith.

The Program examined the events surrounding an attempted contract killing by the "Phantom Hitman" in Knoxville, Tennessee in 1994. Id. ¶ 11. As part of its presentation of the facts of this true story, the Program attempts to give viewers insight into the world in which the victim and perpetrator lived: Knoxville, Tennessee. *See* Exhibit A, Request for Judicial Notice. In this context, the Program includes a general commentary about Knoxville, UTK and regional sports culture, illustrated in part by a brief sequence of stadium scenes during a UTK football game.[4] Id. This sequence allows viewers to see the huge number of people drawn to the games, the colossal noise of the crowd, the general atmosphere of excitement at the game, and Knoxville culture in general. Id. During this brief sequence, and as part of the actual noise occurring within the stadium, the UTK marching band can be heard playing an instrumental version of the musical composition "Rocky Top." Id. The song is audible for a total of approximately twelve seconds; however, the tremendous noise of the crowd and the narration of the documentary obscure the song for approximately six of the twelve seconds. Id. Therefore, the song "Rocky Top" can be heard on its own for only six seconds of the Program. Id. The Program in its entirety lasts approximately forty-eight minutes, with the stadium scene appearing approximately

---

[4] Although it is appropriate for the Court to view the Program in its entirety, *see* Exhibit A (which includes the portion of the Program related to the general commentary about Knoxville), for the convenience of the Court, AETN has proposed to submit Exhibit A-1 to the Request for Judicial Notice, which includes the allegedly infringing twelve seconds of the song "Rocky Top" being played by the UTK marching band during a game at Neyland Stadium and approximately two minutes immediately before and after.

three minutes and forty seconds into the episode.  Id.  The stadium scene is followed by an illustrative shot of a souvenir/book store named "Rocky Top Books East."  Id.

AETN moves for the dismissal of Plaintiff's claim because the incorporation of documentary footage from Neyland Stadium during a UTK football game which captures twelve seconds of background noise including the UTK marching band playing "Rocky Top," in the context of the forty-eight minute factual Program and its description of the culture of Knoxville, Tennessee, constitutes fair use as a matter of law.  This unusually clear example of fair use makes this case particularly appropriate for a Rule 12(b)(6) motion.

## ARGUMENT

### A.  Standard of Law

A motion to dismiss a complaint under Rule 12(b)(6) tests the legal sufficiency of the claims asserted.  The Court accepts as true well-pleaded facts alleged in the complaint, which are construed in the light most favorable to the plaintiff.  Mertik v. Blalock, 983 F.2d 1353, 1355 (6th Cir. 1993).  However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (quoting Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000)).

The Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007), that a claim survives dismissal only when the claimant alleges underlying facts that provide "plausible grounds" for relief and "raise a right to relief above the speculative level."  In Twombly, the Supreme Court explicitly rejected the federal pleading standard granting dismissal only if "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561-63 (citations omitted).  Moreover, the United States Supreme Court subsequently held that the heightened standard articulated in Twombly applies to all civil cases,

4

not merely antitrust or similarly "complex" cases. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). In Iqbal, the Supreme Court made clear that not every allegation in the complaint is entitled to the assumption of truth. Id. at 1951. The Supreme Court explained:

> Were we required to accept this allegation as true, respondent's complaint would survive petitioner's motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context…. And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

Id. at 1954. To survive a motion to dismiss, a complaint must allege "all the material elements necessary to sustain recovery under some viable legal theory." Twombly, 550 U.S. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)). Even accepting the factual allegations – but not the conclusory statements – in the Complaint as true, Plaintiff's claims fail as a matter of law and must be dismissed.

Additionally, and as more fully demonstrated in AETN's simultaneously-filed Request for Judicial Notice, the Court should consider materials that are incorporated by reference in, or are integral to, the Complaint, as well as public records and other documents otherwise appropriate for the taking of judicial notice in connection with this Motion. Wyser-Pratte Management Co., Inc. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005); Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997). The allegedly infringing television episode, the Program, forms the factual basis of the Complaint. *See* Compl. ¶¶ 11-13, 15-16, 19-21, 25-33, 39. Accordingly, without converting AETN's Motion to Dismiss to one for summary judgment, the Court is entitled to consider the materials attached to the Request for Judicial Notice in making its determination.[5]

---

[5] Although the sheet music and an example sound recording (Exhibits B and C to Defendant's Request for Judicial Notice) provide context for the Court, and it is appropriate for the Court to take judicial notice of both, neither are dispositive to the Motion to Dismiss. *See* Request for Judicial Notice.

30000020

B.  **AETN's Use of Footage from Neyland Stadium during a UTK Football Game, which included Twelve Seconds of Background Noise including the Marching Band Playing "Rocky Top," in describing Knoxville Culture is a Fair Use and Not an Infringement of Plaintiff's Copyright.**

Section 107 of the Copyright Act expressly provides that "the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.  The purpose of the fair-use doctrine is to ensure that courts "avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster."  Princeton Univ. Press v. Mich. Doc. Servs., Inc., 99 F.3d 1381, 1385 (6th Cir. 1996) (en banc), *cert. denied*, 520 U.S. 1156 (1997).  The determination of whether an allegedly infringing work is a fair use involves the following four non-exclusive factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  "All [four factors] are to be explored, and the results weighed together in light of the purposes of copyright."  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994) (citations omitted).

A court may conclude as a matter of law on a motion to dismiss whether a challenged use qualifies as a fair use of a copyrighted work.  Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 560 (1985) (where a court has facts sufficient to evaluate the four fair use factors, it may conduct a fair use analysis without further factfinding); s*ee also* Fisher v. Dees, 794 F.2 432, 435-36 (9th Cir. 1986) (finding fair use where material facts were not at issue or had been

6

admitted, and noting that judgments based on fair use are "legal in nature" and are to be made by the court); Payne v. The Courier-Journal, 2005 WL 1287434, at *3 (W.D. Ky. May 31, 2005) (granting defendant's motion to dismiss copyright infringement claims under Rule 12(b)(6) because a newspaper's use of book excerpts constituted fair use as a matter of law); Phoenix Hill Enters., Inc. v. Dickerson, 1999 WL 33603127 (W.D. Ky. May 20, 1999) (granting defendant's motion to dismiss copyright infringement claims under Rule 12(b)(6) because local politician's distribution of copies of classified advertisements constituted fair use as a matter of law); Burnett v. Twentieth Century Fox Film Corp., 491 F. Supp. 2d 962. 967 (2007) (granting defendant's motion to dismiss because television episode featuring a parody of plaintiff constituted fair use as a matter of law). Therefore, it is appropriate for this Court to consider at this early stage the four statutory fair use factors to determine whether this action requires dismissal.

### (i) Purpose and Character of the Use

In evaluating the purpose and character of the use, the Court is to consider whether the allegedly infringing work is "transformative," and whether the use of that work is for commercial or noncommercial purposes. The Supreme Court has explained:

> The central purpose of this investigation [into purpose and character of use] is to see ... whether the new work merely "supersede[s] the objects" of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative."

Campbell, 510 U.S. at 579. "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." Id. The Second Circuit has stated that this first factor is "the heart of the fair use inquiry." On Davis v. The Gap, Inc., 246 F.3d 164, 171 (2d Cir. 2001).

7

Here, the "new work" is the episode of the documentary television series *City Confidential* about a true crime incident occurring in Knoxville, Tennessee. In describing Knoxville generally, the Program touches on "Big Orange" sports culture, and includes shots from Neyland Stadium during a UTK football game. *See* Exhibit A, Request for Judicial Notice This brief sequence depicts players, cheerleaders, noisy fans, and a short sequence of the UTK marching band playing "Rocky Top." Id. The football game was part of a larger segment about the culture of Knoxville, which concluded with a sequence showing a souvenir/book store named "Rocky Top Books East." Id. The purpose and character of AETN's use of the song "Rocky Top" unquestionably constitutes "criticism, comment, [or] news reporting," which are examples of fair use made explicit in 17 U.S.C. § 107.

Furthermore, the central purpose of the first-factor inquiry is to determine "whether the new work merely 'supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." Campbell, 510 U.S. at 579. Far from superseding "Rocky Top," the brief use of the song "Rocky Top" merely illustrates an aspect the culture of Knoxville, Tennessee and the experience of attending a UTK football game at Neyland Stadium. *See* Exhibit A, Request for Judicial Notice. The documentary passage does not use the song, to the extent it is discernable, for the song's own purposes or "objects." The purpose or "object" of the Program is to present the story of the "Phantom Hitman." To accurately portray the atmosphere in and around Knoxville, Tennessee at the time of the factual events portrayed in the Program requires reference to UTK. One aspect of the sound in the stadium is the sound of the UTK marching band, including the twelve seconds in which the recording captures the UTK marching band playing "Rocky Top." The song thus appears in the Program as just one of many elements

of a larger factual report about the city including the University of Tennessee.  Id.  The appearance in the Program of footage of a souvenir/book store in Knoxville named after "Rocky Top" only emphasizes that the song and its name have been adopted and used by others in ways which impact culture in Knoxville, Tennessee.  Id.  Recording background noise at the football game was necessary for the documentary filmmakers to accurately portray the atmosphere in and around Knoxville, Tennessee at the time of the factual events portrayed in the Program.

Moreover, the use of the song "Rocky Top" in the Program serves as a commentary upon the very notions presented by the song itself.  The chorus of "Rocky Top" ("Rocky Top, you'll always be home sweet home to me; Good ole' Rocky Top; Rocky Top, Tennessee") portrays the area surrounding Knoxville as a quaint, backwoods region where moonshine flows, with "no smoggy smoke" and "no telephone bills." *See* id.  The accompanying visual image of the modern UTK campus and the football game atmosphere, along with a discussion preceding this scene of the region's high tech industry, serves to negate the image the song portrays of East Tennesseans.  *See* id.  Furthermore, within the broader context of the Program as a whole, the simple, cheerful nature of "Rocky Top," as well as the festive atmosphere at the football game, provide a stark contrast to – and are undermined by – the seamy, criminal activities of the episode's subjects.  This form of commentary on the image of Tennessee portrayed by the song is unmistakably transformative.  *See* Lennon v. Premise Media Corp., 556 F. Supp. 2d 310, 323-24 (S.D.N.Y. 2008) (denying injunction against distribution of a documentary film based on fair use and finding that, where fifteen seconds from the original recording of plaintiff's song "Imagine" was used as "'fodder' for social commentary," such use was transformative).

Although one consideration in evaluating the "purpose and character" of a defendant's use of the work is whether the defendant's use is commercial in nature, courts have been warned

not to place too much emphasis on this fact. Jackson v. Warner Bros., Inc., 993 F. Supp. 585, 588 (E.D. Mich. 1997) (quoting Robinson v. Random House, Inc., 877 F. Supp. 830, 840 (S.D.N.Y. 1995) ("because nearly all authors hope to make a profit with their work, courts should be wary of placing too much emphasis on the commercial nature in a fair use determination")). This is because such emphasis would "swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities 'are generally conducted for profit in this country.'" Campbell, 510 U.S. at 584. Thus, "courts are more willing to find a secondary use fair when it produces a value that benefits the broader public interest," even if the use is commercial. Blanch v. Koons, 467 F.3d 244, 253 (2d Cir. 2006) (finding artist's use of a fashion photograph in his painting to constitute fair use). Because the use of "Rocky Top" in the Program is transformative and therefore benefits the public, the commercial nature of the episode is a far less important element. *See* id.; *see also* Gordon v. Nextel Communications, 345 F.3d 922, 924-25 (6th Cir. 2003) (finding defendant's use of plaintiff's illustrations in an advertisement to be non-actionable, despite the commercial purpose of defendant's use). This factor weighs heavily in favor of a finding of fair use.

**(ii) Nature of the Copyrighted Work**

The copyrighted work at issue in this lawsuit is a musical composition. It is well-settled that compositions of songs "fall within the core of the copyright's protective purposes." Campbell, 510 U.S. at 586. However, this factor is not dispositive. There are numerous instances of a finding of fair use even when the copyrighted work is a creative work entitled to stronger protection. *See*, *e.g.*, Pro Arts, Inc. v. Hustler Magazine, Inc., 787 F.2d 592 (6th Cir. 1986) (holding that defendant's reproduction of plaintiff's photograph in an advertisement

10

30000020

constituted fair use); Jackson v. Warner Bros., Inc., 993 F. Supp. 585 (E. D. Mich. 1997) (holding that defendant's reproduction of plaintiff's painting in a motion picture constituted fair use); Higgins v. Detroit Ed. Television Found., 4 F. Supp. 2d 701, 709 (E.D. Mich. 1998) (holding that defendant's use of plaintiff's song in an educational video constituted fair use). Because most copyrights are entitled to "core" protection, this factor is rarely determinative and not nearly as important as the other factors. *See* Lennon, 556 F. Supp. 2d at 326 (recognizing that although musical works are at the core of copyright protection, where the use of the song in a motion picture does not exploit the song's creative virtues, this factor has "limited weight").

### (iii) Amount and Substantiality of Portion Used

The third factor, the amount and substantiality of the portion used in relation to the copyrighted work as a whole, weighs heavily in favor of a finding of fair use. "[T]he larger the volume ... of what is taken, the greater the affront to the interests of the copyright owner, and the less likely that a taking will qualify as a fair use." Princeton Univ. Press, 99 F.3d at 1389 (internal quotation omitted). During the Program, only approximately twelve seconds of "Rocky Top" as background noise are included. *See* Exhibit A, Request for Judicial Notice. Six of those twelve seconds are obscured by crowd noise and the narrator of the documentary, leaving only six seconds of program time in which "Rocky Top" alone is clearly audible.[6] Id. The full twelve seconds constitute only .004% of the Program. *See* id. This fleeting, indistinct, and non-prominent use of the work as background noise is simply *de minimis*.[7] *See* Gordon, 345 F.3d at

---

[6] The song "Rocky Top" consists of three verses and a repeated chorus (*see* Exhibit B, Request for Judicial Notice); the version attached as Exhibit C to the Request for Judicial Notice (one which Plaintiff cites as a good example) lasts a full two minutes and thirty-six seconds. The full twelve seconds in the Program constitute approximately .076 % of the full song "Rocky Top."

[7] Other courts have held that copying just as brief and incidental as that of AETN does not rise to the level of infringement at all, and does not even require a fair use analysis. Sandoval v. New Line Cinema Corp., 147 F.3d 215, 217 (2d Cir. 1998) (holding that where use of copyrighted photographs in motion picture is "so trivial as to fall below the quantitative threshold of substantial similarity," a fair use analysis is not necessary); Gottlieb Development v. Paramount Pictures, 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008) (holding that trivial copying is *de*

11

924-25 (holding that defendant's eighteen-second use of blurry images of plaintiff's artwork in the background of a television advertisement constituted a *de minimis* use and was therefore not actionable); Higgins, 4 F. Supp. 2d at 709 (holding that defendant's twenty-second use of an instrumental version of plaintiff's song as background music in an educational video constituted fair use).

In an effort to "plead around" fair use, Plaintiff makes the conclusory allegations that the portion of the song used is "distinct and important" and "commercially significant." Compl. ¶¶ 25, 31. Respectfully, this prong of the fair use doctrine is for the Court to decide. Further, the Court is not required to accept conclusory allegations in ruling on this Motion. Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000)). As even a cursory review of "Rocky Top" reveals, the composition is musically repetitive. *See* Exhibits B-C, Request for Judicial Notice. Because of the song's repetitive nature, it would be difficult to identify any portion of the composition that Plaintiff would not claim is "distinct" or "important." *See* Lennon, 556 F. Supp. 2d at 326 (noting the repetitive nature of the composition "Imagine" and determining that the defendant's use was not unreasonable under those circumstances). Additionally, as discussed in section (i), the Program is a work of commentary and news reporting, and its use of the work is therefore transformative. For purposes of commentary, including documentary and news reporting, it is often necessary to use an easily recognizable portion of the underlying work; to do otherwise would entirely defeat the purpose of the commentary or reporting. Id. (citing Campbell, 510 U.S. at 588-89).

---

*minimis* as a matter of law and not actionable because it does not meet the substantial similarity test). Therefore, the third factor clearly weighs in favor of AETN, so much so that the Court could, in the alternative, rule in favor of AETN on *de minimis* grounds related to "substantial similarity."

12
30000020

Thus, the brevity and nature of the use demonstrate that the creators of the Program used only so much of "Rocky Top" as was necessary to help establish the background for a factual documentary. This factor weighs strongly in favor of fair use.

**(iv) Effect of the Use Upon Potential Market or Value of Work**

The fourth factor in evaluating fair use is the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. Plaintiff claims in conclusory fashion that AETN's use of "Rocky Top" in the Program harms the market for licenses of the musical composition. Compl. ¶ 32. As recognized by numerous courts in other fair use cases, because AETN's use of "Rocky Top" is transformative and in no way supersedes or takes the place of the work, the market for licensing rights to the composition will not be harmed. *See* Pro Arts, Inc. v. Hustler Magazine, Inc., 787 F.2d 592 (6th Cir. 1986) (quoting Consumers Union of United States, Inc. v. General Signal Corp., 724 F.2d 1044, 1050-51 (1984) ("'The theory behind copyright laws is that creation will be discouraged if demand can be undercut by copiers. Where the copy does not compete in any way with the original, this concern is absent'")); *see also* Lennon, 556 F. Supp. 2d at 327 (*citing* Bill Graham Archives v. Dorling Kindersley, Ltd., 448 F.3d 605, 614-615) (noting that, where a use is transformative and therefore falls within a transformative market, there can be no harm to a plaintiff's market for licensing the copyrighted work). Simply stated, Plaintiff is not entitled to a license for a fair use.

Moreover, courts analyzing this factor consider whether those wishing to listen to the song "Rocky Top" or to watch the song being played on television would use the Program as an alternate source, rather than obtaining licensed complete copies.[8] *See* Hoffheinz v. A&E Television Networks, 146 F. Supp. 2d 442, 449 (S.D.N.Y. 2001) (citing Wright v. Warner

---
[8] In fact, the lyrics and an example sound recording of "Rocky Top" are available for free on Tennessee governmental websites. *See e.g.,* http://www.tennesseeanytime.org/homework/songs.html, http://www.utk.edu/athletics/tn_songs.shtml, & http://www.utsports.com/fans/traditions.html.

13

30000020

Books, Inc., 953 F.2d 731, 739 (2d Cir. 1991); Arica v. Palmer, 970 F.2d 1067, 1078 (2d Cir. 1972)) (finding no potential loss of market value and applying the fair use defense where defendant's documentary program included only a twenty-second sequence of plaintiff's film). Where only twelve seconds of "Rocky Top" have been used in total, six of which are obscured by crowd noise and the documentary's narrator, such a notion is nonsensical.

Finally, Plaintiff's own allegations in the Complaint refute its claims that AETN's use of "Rocky Top" in the Program has impaired its market for licensing the song. Plaintiff alleges that a past attempt by AETN to obtain a synchronization license for the song "Rocky Top" in connection with another program was denied "due to the nature of the material contained in the planned program." Compl. ¶ 17. As an initial matter, a request for a license in a different context, or even in the context of the copyrighted work at issue, does not preclude a finding of fair use or establish bad faith. *See* Lennon, 556 F. Supp. 2d at 325 (use of song was fair, and the fact that defendants obtained permission for other music in film did not prove bad faith, because "[i]f the use is otherwise fair, then no permission need be sought or granted") (quoting Campbell, 510 U.S. at 585 n. 18); Maxtone-Graham v. Burtchaell, 803 F.2d 1253 (2d Cir. 1986) (use of copyrighted materials was fair, and the fact that defendant made a request for permission which was rejected did not establish bad faith); Blanch, 467 F.3d at 256 (same). Moreover, one can only interpret this language to mean that Plaintiff wishes to choose to withhold licensing of "Rocky Top" for programs that portray Tennessee, its mountains, and its citizens – the subjects of "Rocky Top" – in a light that Plaintiff today may claim calls into question the image perpetuated by the song. Plaintiff's statement embodies the reasoning behind the Supreme Court's pronouncement that "there is no protectable derivative market for criticism." Campbell, 510 U.S. at 592 (1994). As the Supreme Court noted, "People ask for criticism, but they only

14

30000020

want praise." Id. (quoting S. Maugham, Of Human Bondage 241 (Penguin ed. 1992)). To deny fair use merely on plaintiff's conclusory assertion that a potential licensing market exists for commentary such as AETN's would essentially squelch all negative commentary on the work, because Plaintiff inevitably would choose to provide licenses only to those who place "Rocky Top" in an unambiguously positive light. But "Rocky Top," like Knoxville itself, exists as a matter of fact in a world where murder and other crimes exist, and the Constitution protects the right to report on such facts. Id; *see also* Eldred v. Ashcroft, 537 U.S. 186, 221 n.24 (2003) ("it is appropriate to construe copyright's internal safeguards to accommodate First Amendment concerns"); Wojnarowicz v. American Family Ass'n., 745 F. Supp. 130, 147 (S.D.N.Y. 1990) ("where vital First Amendment concerns are implicated, as here, that breadth expands and accords greater protection to what might otherwise constitute an infringement."). Plaintiff's effort to require licenses for even fair uses is not supported by the law. This factor also weighs in favor of a finding of fair use.

## CONCLUSION

Balancing the factors that weigh on the fair use doctrine under 17 U.S.C. § 107, it is apparent that, as a matter of law, the Program does not infringe Plaintiff's rights in the musical composition "Rocky Top." WHEREFORE, the Defendant AETN respectfully requests that this Court GRANT its Motion to Dismiss the Complaint for failure to state a claim.

15

Respectfully submitted,

/s/ Robb S. Harvey
Robb S. Harvey (Tenn. BPR No. 011519)
Heather J. Hubbard (Tenn. BPR No. 023699)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Phone: (615) 244-6380
Facsimile: (615) 244-6804
E-mails: robb.harvey@wallerlaw.com and
heather.hubbard@wallerlaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum was served by hand-delivery and was electronically filed with the Court and served via the Court's Electronic Case Filing system on this 11th day of August, 2009, to the following counsel of record:

Richard S. Busch
King & Ballow
315 Union Street, Suite 1100
Nashville, TN 37201

/s/ Robb S. Harvey
*Counsel for Defendant*