UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| House of Bryant Publications, L.L.C., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 3:09-0502 |
| | ) Judge Trauger |
| A&E Television Networks, | )<br>) JURY DEMAND |
| Defendant. | )<br>)<br>) |

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, House of Bryant, L.L.C. ("House of Bryant") responds to the Motion to Dismiss of defendant A&E Television Networks ("AETN"). As discussed below, defendant's Motion should be denied.

## I. INTRODUCTION

House of Bryant is the administrator of the rights of Dane B. Bryant, Del R. Bryant and the Estate of Felice Bryant, owners of a composition entitled "Rocky Top." Doc. No. 1, ¶¶ 8 and 9. The Bryants have compiled with the laws regarding registration of the copyright of this work. *Id.*, ¶ 9. House of Bryant actively licenses "Rocky Top" for live performances and synchronization in audio-visual works. *Id.*, ¶ 10.

House of Bryant has alleged that, along with production company Jupiter Entertainment, defendant created an episode of the program *City Confidential* entitled "Episode #122-Knoxville, TN: Phantom Hitman." ("Phantom Hitman"). *Id.*, ¶ 11. One scene in "Phantom Hitman" contains a "lengthy and recognizable" portion of "Rocky Top" played by the University of

Tennessee's "Pride of the Southland Band." *Id.*, ¶ 13. Defendant used this portion of "Rocky Top" without license from House of Bryant . *Id.*, ¶ 15.

House of Bryant filed this lawsuit on June 3, 2009. Doc. No. 1. Defendant filed the instant "Motion to Dismiss" on August 11, 2009. Doc. No. 7.

Defendant's Motion to Dismiss does not contest the above allegations, which give rise to a *prima facie* case of copyright infringement.[1] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (U.S. 1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.") Rather, defendant moves this court to dismiss this case because it claims its use of "Rocky Top" is "fair use as a matter of law." Doc. No. 7, p. 1.

Defendant's fair use defense was created only after defendant did not want to pay a licensing fee require by House of Bryant. Defendant knows that discovery will prove fatal to its *ad hoc* defense, so it now moves this Court to dismiss the case without hearing any evidence at all. Defendant has not proven its fair use defense, and this Court should deny the motion.

## II.  ARGUMENT

### A.  Defendant has Misstated and Misapplied the Appropriate Legal Standard

At the heart of defendant's motion is a procedural sleight-of-hand—first, defendant attempts to have matters outside the complaint incorporated by judicial reference to avoid converting its motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d). Next, emboldened by language in recent Supreme Court decisions,

---

[1] Defendant makes reference to a potential challenge as to the proper party-in-interest but does not seriously contest the Bryants' ownership of the composition. Doc. No. 7, p. 2, n. 1. Likewise, defendant claims House of Bryant has not attached any copyright certificate to the Complaint, but House of Bryant has included the Copyright Numbers in question in its Complaint, Doc. No. 1, ¶ 9, and the certificates are public record documents available online at <copyright.gov>.

2

defendant urges the Court to disregard "conclusory" statements made in the Complaint and substitute defendant's own interpretation of the facts.

Defendant attempts to create a procedural catch-22, urging the Court to ignore what House of Bryant has pleaded, but, at the same time, attempting to ensure no actual factual discovery takes place. Defendant cannot reasonably claim there are no issues of material fact such that summary judgment can be granted; however, the moving party faces a *lower* burden on summary judgment than it does moving to dismiss. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("A party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a **higher burden** than a party proceeding on a motion for summary judgment.") (emphasis added); see also 11 James Wm. Moore, Moore's Federal Practice § 56.30[3][c] (3d ed. 2008). Thus, defendant is attempting to take advantage of confusion surrounding changes to the Motion to Dismiss standard to have this case thrown out of court.

Based on defendant's own procedural wrangling, it is clear they believe summary judgment would be inappropriate at this stage in the litigation. For even greater reason, then, a Motion to Dismiss would be equally inappropriate.

**1.      Defendant's Motion should be judged under the Rule 56 standard, which it cannot meet.**

As argued in House of Bryant's objection to defendant's request for judicial notice, contemporaneously-filed herewith, this Court should not take judicial notice of the television program "Phantom Hitman." The Federal Rules provide that when

> matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(d).

Summary judgment is only proper if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The "genuine issue of material fact" need not be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). This Court must construe the evidence produced in the light most favorable to House of Bryant, as the non-moving party, drawing all justifiable inferences in its favor. *Id.* at 255. Thus, "if reasonable minds could differ as to the import of the evidence," summary judgment is not proper. *See id.* at 250.

It is well-established that the plaintiff must receive "a full opportunity to conduct discovery" to be able to successfully defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 257; *see also Celotex Corp.*, 477 U.S. at 322 ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994) ("[in light of *Anderson* and *Celotex*,] a grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery").

In the instant case, no discovery has taken place. As will be discussed below, defendant's motion merely disagrees with the factual assertions of the Complaint. Summary judgment at this stage, without any record or testimony, would be improper.[2]

---

[2] Plaintiff intends to move for summary judgment only after sufficient discovery has been taken to establish defendant's copying and other facts relevant to rebut whatever affirmative defenses are raised in defendant's answer.

4

2. *Twombley* and *Iqbal* do not raise the "Motion to Dismiss" standard above the Rule 56 summary judgment standard.

As discussed above, defendant's Motion should be denied under the summary judgment standard, which is more favorable to defendant's cause. For even greater reason, defendant's Motion fails under the Motion to Dismiss standard.

Defendant relies principally on an improper reading of two recent Supreme Court cases, *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), to raise the pleading standard far beyond the requirements of the Federal Rules.

As was the standard before, under both *Twombley* and *Iqbal*, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombley*, 550 U.S. at 570) (emphasis added). The Sixth Circuit, in explaining the new standard compared with the previous "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), wrote, "Indeed, while this new *Iqbal/Twombley* standard screens out the 'little green men' cases just as *Conley* did, it is designed to also screen out cases that, while not utterly impossible, are '*implausible*.'" *Courie v. Alcoa Wheel & Forged Prods.*, No. 07-4440, 2009 U.S. App. LEXIS 18561, at *6 (6th Cir. Aug. 18, 2009) (emphasis added).

Although higher than the *Conley* standard, the Sixth Circuit has also cautioned against raising the pleading bar too high:

> In *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), decided two weeks after *Twombly* [. . .] the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 2200 (quoting *Twombly*, 127 S. Ct. at 1964). [. . .] We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to

dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 294 (6th Cir. 2008).

### 3. Defendant's motion impermissibly seeks to lower the bar for dismissal.

Central to defendant's attempted procedural gambit is the statement in *Iqbal* that "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to the factual context." *Iqbal*, 129 S. Ct. at 1954. While House of Bryant does not contest that proclamation, defendant simply substitutes its own factual and legal claims in place of what House of Bryant has pleaded in the Complaint. For example, defendant urges the Court to "disregard" a portion of paragraph 13 of the Complaint which states "One scene in 'Phantom Hitman' features a lengthy and recognizable portion of the song 'Rocky Top' as played by the University of Tennessee's 'Pride of the Southland' Marching Band." Doc. No. 7, p.2. Instead of a "lengthy and recognizable portion," defendant's make the factual allegation that its use is "fleeting, indistinct and non-prominent." Doc. No. 7, p. 11. Defendant has merely substituted its own allegations for those of the plaintiff.

In a motion for summary judgment, both parties would be required to put forth the evidence they had, and any conflict would be decided in favor of the non-movant. *See Celotex; Anderson, supra.* Defendant, citing *Iqbal*, attempts to abrogate that procedural protection., urging the Court merely to disregard what House of Bryant has pleaded (which the Court must accept as true) and instead adopt their version of the facts. Doc. No. 7, p. 12.

What defendant advocates would impermissibly *lower* the bar for a motion to dismiss. Rather than having to rebut House of Bryant's factual allegations as in a motion for summary judgment, defendant could merely substitute its own allegations and argument and ask the Court to disregard the House of Bryant's "conclusory" statements.

B.   **Defendant's "Fair Use" Analysis is Legally Incorrect and Factually Unsupported.**

House of Bryant does not disagree with defendant's recitation of the law regarding fair use. Initially developed by the courts, the doctrine was codified at 17 U.S.C. § 107 in 1976. *Princeton Univ. Press v. Michigan Doc. Servs.*, 99 F.3d 1381, 1385 (6th Cir. 1996). Section 107 provides:

> The fair use of a copyrighted work, including such use by reproduction in copies . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include --
>
> > (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> > (2) the nature of the copyrighted work;
> > (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> > (4) the effect of the use upon the potential market for or value of the copyrighted work. . . .

17 U.S.C. § 107; *Princeton Univ. Press*, 99 F.3d at 1385.

The Supreme Court has stated that the fourth fair use factor may be the most important. *Harper & Row Publishers, Inc. v. National Enters.*, 471 U.S. 539, 566 (1985).

1.   **The AETN program "Phantom Hitman" is a non-transformative, commercial work.**

The first fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). *Princeton Univ. Press*, 99 F.3d at 1385. In evaluating the purpose and character of the use of the work at issue, a court considers whether the new work is "transformative" and whether the use of that work is for commercial or noncommercial purposes. *Zomba Enters. v. Panorama Records, Inc.*, 491 F.3d 574, 582 (6th Cir. 2007).

7

AETN has made a commercial, non-transformative use of the song "Rocky Top" by simply synchronizing House of Bryant's composition with their television program, which they broadcast on their cable network for profit. House of Bryant pleads both of the facts in the Complaint and facts disclosed in discovery will show this point. Doc No. 1, ¶¶ 19, 20, 28, 29. As such, this factor favors House of Bryant.

### a. "Phantom Hitman" is a commercial work and defendant does not dispute that point.

Under the first prong of fair use, a court will consider whether a work is made for commercial or noncommercial purposes. *Zomba, supra.* The Supreme Court has stated, "[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417, 451 (1984).[3] Further, "the crux of the profit/non-profit distinction is whether the user stands to profit from exploitation of the copyrighted material *without paying the customary price*." *Harper & Row Publishers, Inc. v. National Enters.*, 471 U.S. 539, 562 (1985) (emphasis added).

Deciding a case under this first factor for the purposes of a preliminary injunction, a court in the Southern District of New York observed, "It appears that plaintiff normally charges customers for the privilege of copying portions of its database and accordingly, it is likely that plaintiffs would prevail on the first factor of the fair use defense." *Telerate Sys., Inc. v. Caro*, 689 F. Supp. 221, 229 (S.D.N.Y. 1988). House of Bryant has pleaded, and will prove, it normally charges to synchronize "Rocky Top" in audio-visual works. Doc. No. 1, ¶ 10.

In their motion, AETN does not contest that their use is noncommercial. See Doc. No. 7, p. 9. Thus, the parties do not reasonably dispute that "Phantom Hitman" is a commercial work.

---

[3] Criticism of this point certainly exists, but no court or commentator has sought to abolish the distinction. 4 Melvin B. Nimmer and David Nimmer, Nimmer on Copyright § 13.05[A][1][c] (2008).

### b. "Phantom Hitman" is not a "transformative" use of "Rocky Top"

In addition to the commercial/noncommercial distinction, a court will consider whether the new work is a "transformative" use. To determine whether the new work is "transformative" the court considers whether the allegedly infringing work "merely supersedes" the original work "or instead adds something new, with a further purpose or different character, altering the first with new meaning or message." *Castle Rock Entm't v. Carol Publ'g Group*, 150 F.3d 132, 141 (2d Cir. 1998) (internal punctuation omitted). "If the secondary use adds value to the original—if [copyrightable expression in the original work] is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings—this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society." *Id.*

Defendant's use of "Rocky Top" adds nothing to it. House of Bryant licenses the song to third parties for use in various settings, including synchronization with audio-visual images (television and movies). Doc. No. 1, ¶ 10. Defendant has synchronized the song in connection with images in their television program. *Id.*, ¶ 13, 15. Thus, House of Bryant's licensed uses and defendant's use are identical.

Defendant spends much of this portion of their Motion attempting to argue their use of the song "Rocky Top" somehow makes critical comment on Knoxville, the University of Tennessee, or "Rocky Top," itself. Doc. No. 7, p. 10. This discussion is misplaced.

In discussing parody under the first prong of the fair use defense, the Supreme Court has said, "For the purposes of copyright law, the nub of the definitions, and the heart of any parodist's claim to quote from existing material, is the use of some elements of a prior author's composition to create a new one that, at least in part, *comments on that author's works.*" *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 580 (1994) (emphasis added). The same standard

applies in considering defendant's work in the fair use setting. *Blanch v. Koons*, 467 F.3d 244, 255 (2d Cir. 2006) ("We have applied Campbell in too many non-parody cases to require citation for the proposition that the broad principles of *Campbell* are not limited to cases involving parody.") Viewed in the light most favorable to House of Bryant, as it must be, if it is viewed at all, "Phantom Hitman" has nothing to do with the University of Tennessee or the game of football—the subjects of the "documentary" have no connection to either, other than living in Knoxville. Football is hardly referenced after the scene in which "Rock Top" is played. The "fair use" analysis simply does not embrace defendant's use to "illustrat[e] an aspect of the culture of Knoxville, Tennessee and the experience of attending a UTK football game at Neyland Stadium." Doc. No. 7, p. 8. Application of this factor also illustrates yet again why this matter is inappropriate for a motion to dismiss, since the parties do not agree on the purpose and characterization of defendant's use of "Rocky Top."

Next, defendant claims it has created a "commentary upon the notions presented by the song itself." Doc. No. 7, p. 9. Defendant quotes sections of the lyrics of 'Rocky Top" and fantasizes about how "Phantom Hitman" criticizes the notions therein. Of course, defendant did not actually *use* the lyrics in "Phantom Hitman," which contains only the instrumental portion of "Rocky Top." Defendant makes no attempt to demonstrate how the instrumental portion of "Rocky Top" it actually used is criticized in "Phantom Hitman."[4]

---

[4] Several times in their motion defendant refers to their use of "Rocky Top" as "actual noise occurring within the stadium" and "background noise." *E.g.*, Doc. No. 7, p. 4, 11. This is completely disingenuous. House of Bryant expects discovery to show that 1) defendant selected the portion used out of many hours of football game footage, specifically for the presence of "Rocky Top" therein, and 2) defendant synchronized the audio footage of "Rocky Top" with footage from the game when the song was not actually being played in the stadium. This second point is clear because there are several jumps in the action while "Rocky Top" is playing in "Phantom Hitman" and, of course, NCAA rules prohibit bands from playing music when the ball is in play. ("Persons subject to the rules, including bands, shall not create any noise that prohibits a team from hearing its signals (Rule 1-1-6)." The NCAA football rulebook is available for download at <http://www.ncaapublications.com/Uploads/PDF/Football_Rules_5_2204c0005d-845f-4813-8391-

Defendant's use is in sharp contract to the use in *Lennon v. Premise Media Corp.*, a case on which it relies. 556 F. Supp. 2d 310 (S.D.N.Y. 2008). In *Lennon*, the defendant used 15 seconds of the John Lennon song "Imagine" in the feature-film *Expelled*, a movie that concerns the theory of "intelligent design" and criticizes those who themselves are critical of religion. *Id.* at 316-317. While the music played, the lyrics appeared on the screen in subtitles, as follows: "Nothing to kill or die for / And no religion too." *Id.* at 317. Behind the subtitles, four brief archival scenes play in succession: the first sequence features a group of children in circle, the second is a young girl spinning and dancing, the third is a military parade, which gives way to a close up of Joseph Stalin waiving. *Id.* The producer of the defendant's film, with whom the court agreed, argued, "The Cold War-era images of soldiers, followed by images of Stalin, express the filmmakers' view that the song's secular utopian vision 'cannot be maintained without realization in a politicized form' and the form it will ultimately take is dictatorship." *Id.* at 323. In *Lennon*, the filmmakers directly criticize the portion of the song they copy, both music and lyrics. In "Phantom Hitman," absolutely no link, direct or indirect, can be drawn.

House of Bryant alleges defendant's use is both "commercial" and "non-transformative." The above discussion shows such allegations are "plausible," and thus, cannot be disregarded under *Iqbal* and *Twombley*. Thus, the first fair use factor favors House of Bryant.

2. **Defendant concedes the nature of the copyrighted work favors House of Bryant.**

The second fair use factor is the nature of the copyrighted work. 17 U.S.C. § 107(2). *Princeton Univ. Press*, 99 F.3d at 1385. Defendant rightly asserts House of Bryant's work is a musical composition, a creative work that falls within the core of protected works. Doc. No. 7,

---

54f15136079d.pdf>). By characterizing their use as "background," defendant attempts to minimize the editorial choices it made.

p. 10-11; *Campbell*, 510 U.S. at 586. In addition, House of Bryant has specifically pleaded that "Rocky Top" is a creative work. Doc. No. 1, ¶ 30.

Thus, there is no debate regarding the plausibility of House of Bryant proving this factor at trial, and the second fair use factor favors House of Bryant.

3.  **Defendant used a significant portion of "Rocky Top."**

The third factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). *Princeton Univ. Press*, 99 F.3d at 1385. House of Bryant has specifically pleaded that defendant has used a "recognizable, distinct and important" section of "Rocky Top" in "Phantom Hitman." Doc. No. 1, ¶ 25. While defendant again reminds the Court that it need not accept the legal allegations of the complaint as true, *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 276 (6th Cir. 2007), the importance of the portion of "Rocky Top" taken by defendant as it relates to the composition as a whole is properly the subject of testimony not a "legal allegation."

AETN has conceded "Phantom Hitman" copies 12 seconds of the song "Rocky Top," which in at least one recorded version, is approximately 2:38 in length. Doc. No. 7, p. 11. Defendant's initial brief made a mathematical error by a factor of 100 in comparing the portion of "Rocky Top" used with the length of "Phantom Hitman," which it has since corrected, but left the argument the same. See Doc. Nos. 14 and 14-1. As the Southern District of New York observed with regard to a fair use defense involving copying films, "[E]ven assuming [defendant's] use of some of the films was quantitatively small, the jury could reasonably have concluded that it was qualitatively great." *Roy Export Co. Establishment etc. v. Columbia Broadcasting System, Inc.*, 503 F. Supp. 1137, 1145 (S.D.N.Y. 1980) (remarking that "substantiality" is a "classic jury question").

12

At base, defendant has ignored the wisdom of Judge Learned Hand: "No plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936).

Moreover, merely throwing around fractions is not illustrative—had defendant copied the entire song "Rocky Top" in "Phantom Hitman," it would still take up only approximately 5.5% of the total running time.[5]

Rather, courts must examine the third fair use factor -- "the amount and substantiality of the portion [of the copyrighted work] used in relation to the copyrighted work as a whole" -- in context. *Castle Rock Entm't*, 150 F.3d at 144. "The inquiry must focus upon whether 'the extent of . . . copying' is consistent with or more than necessary to further 'the purpose and character of the use.'" *Id.* (*quoting Campbell*, 510 U.S at 586-87). Courts must consider not only the quantitative but also the qualitative substantiality of the copying. *Telerate Sys., Inc.*, 689 F. Supp. at 229. Courts will also look to whether the "heart of the work" was taken in the copying. *See, e.g., Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 565 (1985).

Courts have found even quantitatively small copying to be too much for fair use purposes: 300 words out of 200,000 words of plaintiff's work, *id.* at 566; a few key passages out of 20,000 total passages, *Telerate Sys., Inc.*, 689 F. Supp. at 229; or one minute and fifteen seconds from plaintiff's one hour and twelve minute motion picture, *Roy Export Co. Establishment*, 503 F. Supp. at 1145.

Again, *Lennon*, a case which defendant cites, is unavailing. Unlike in the instant case, the court had significant expert testimony to consider regarding musicological aspects of the

---

[5] Language in the *Lennon* case makes passing reference to the song as a percentage of the total movie as a "minor factor" in whether the use was transformative. *Lennon*, 556 F. Supp. at 324. The plain language of the third factor instructs the Court to consider the portion used in relationship to the copyrighted work, not the new work, although certainly courts have considered both.

song and the significance of the portion the defendant used. *Lennon*, 556 F. Supp. at 326. In lieu of such expert testimony, defendant here asks the Court to simply conduct a "cursory review." Doc. No. 7, p. 12. House of Bryant pleaded the portion of "Rocky Top" used is an important part of the total work, Doc. No. 1, ¶ 25, defendant merely makes the *ipse dixit* statement that it is "musically repetitive." Doc. No. 7, p. 12.

Further, in *Lennon*, defendant "selected a portion of the song. . . that expresses the idea they specifically wished to critique. . . without copying other portions of the song that do not express that idea." *Lennon*, 556 F. Supp. 325-326. As explained above, defendant's only argument that they have criticized the song is based on the song's lyrics, which it did not copy.

Most tellingly, defendant cannot decide whether they have used an important, recognizable section of "Rocky Top" or not. On the one hand, defendant argues it was "necessary to use an easily recognizable portion of the underlying work; to do otherwise would entirely defeat the purpose of the commentary or reporting." Doc. No. 7, p. 12. On the very same page, defendant urges the court to dismiss the case because its use of "Rocky Top" is *de minimis* as it does not meet the "substantial similarity" test for copyright infringement. *Id.*, n. 7. Clearly, both theories cannot be correct[6]: either defendant sought to comment upon "Rocky Top" and selected a portion that audiences would recognize, or so small a portion of "Rocky Top" was used that it is unrecognizable.

The cases cited by defendant for this *de minimis* defense highlight its weakness and inapplicability to this case. In *Sandoval v. New Line Cinema Corp.*, the plaintiff's "photographs appear fleetingly and are obscured, severely out of focus, and virtually unidentifiable." 147 F.3d 215, 218 (2d Cir. 1998). *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625

---

[6] And, in fact, neither can be true, since the Court must take the facts pleaded in the Complaint as true for the purposes of this motion. As House of Bryant contends, and pleads, defendant used a recognizable portion of "Rocky Top" and does not comment on it. Doc. No. 1, ¶¶ 25 and 28.

14

(S.D.N.Y. 2008) explicitly mentions the "average lay observer" would not be able to discern any distinctive elements of the plaintiff's design. *Id.* at 633. Here, not to belabor the point, plaintiff has pleaded the opposite, that the portion taken by defendant is "recognizable." Doc. No. 1 ¶¶ 13, 25.

Sixth Circuit law on the subject is in full agreement. "The Sixth Circuit has recognized that the principle of *de minimis non curat lex* ('the law cares not for trifles') can be applied as a defense to copyright infringement if it can be shown that a substantial amount of the copyrighted work was not taken." *Mathews Conveyor Co. v. Palmer-Bee Co.*, 135 F.2d 73, 85 (6th Cir. 1943); *see also Jobete Music Co. v. Johnson Communs., Inc.*, 285 F. Supp. 2d 1077, 1088 (S.D. Ohio 2003) ("As a rule, a taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation."). Other than in a footnote, defendant does not actually contend "Rocky Top" is unrecognizable in "Phantom Hitman."

Defendant's own Motion addresses the third fair use factor used in conflicting ways. Clearly, as House of Bryant alleged, House of Bryant can "plausibly" prove defendant used a significant portion of "Rocky Top."

4. **Defendant's use harms the synchronization license market for "Rocky Top."**

The fourth factor requires the Court to consider "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4); *Princeton Univ. Press*, 99 F.3d at 1385. The Supreme Court has referred to this factor as "undoubtedly the single most important element of fair use." *Harper and Row Publishers*, 471 U.S. at 566. House of Bryant has alleged and will prove it is in the business of licensing musical compositions, including "Rocky Top" and that defendant's use harms the market. Doc. No. 1, ¶¶ 10 and 34.

15

Defendant used the clip "Rocky Top" in precisely the same manner House of Bryant would seek to license it: by synchronizing it with an audiovisual program, including such a program depicting the University of Tennessee football team. Defendant's arguments to the contrary are unavailing.

Defendant argues that because their use of "Rocky Top" in no way competes with "Rocky Top," the license market is not harmed. This is untrue, as the fourth factor "requires courts to consider not only the extent of market harm caused by the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in substantially adverse impact on the potential market for the original." *Ringgold v. Black Entm't Television*, 126 F.3d 70, 79 (2d Cir. 1997) (*quoting Campbell*, 510 U.S. at 590) (internal punctuation omitted). If every potential licensee could use "Rocky Top" any time the state of Tennessee, Knoxville, or University of Tennessee were mentioned, House of Bryant's licensing ability would be completely eroded.

*Ringgold* involved display of a work of visual art on the set of a television show in nine instances for a total duration of 26.75 seconds. *Ringold*, 126 F.3d at 76. The Second Circuit found the district court's analysis legally flawed with regard to the fourth fair use factor. *Id.* at 81. The district court relied primarily on the fact that the television show episode had "little likelihood of adversely affecting poster sales [of the artwork] and that [plaintiff] had not claimed that her ability to license the poster had been 'negatively impacted.'" *Id.*

In correcting this error, the Second Circuit wrote:

[Plaintiff] is not required to show a decline in the number of licensing requests for [the artwork] since the [television show] was aired. The fourth factor will favor her if she can show a "traditional, reasonable, or likely to be developed" market for licensing her work as a set decoration. Certainly, "unrestricted and widespread conduct of the sort engaged in by the defendants. . .would result in

substantially adverse impact on the potential market for [licensing of the original." *Campbell*, 510 U.S. at 590.

*Id.*

Defendant weakly asserts that those wishing to hear the song "Rocky Top" would not use defendant's program "Phantom Hitman" as an alternative. Doc. No. 7, p. 13. Were this the test, though, only complete, literal infringement would favor plaintiffs under the fourth fair use factor. Discovery will show that House of Bryant has, in the past, licensed less than the entire composition. Courts recognize this kind of harm to a market. In *Video-Cinema Films, Inc. v. Lloyd E. Rigler-Lawrence W. Deutch Found.*, Case No. 04 Civ. 5332, 2005 U.S. Dist. LEXIS 26302, *31-*32 (S.D.N.Y. Nov. 1, 2005), the Court accepted licenses for clips of the audio-visual work at issue to be evidence that a commercial market exists for excerpts separate and apart from licenses for the entire movie.

Moreover, the Second Circuit opined, "it is sensible that a particular authorized use should be considered 'more fair' when there is not ready market or means to pay for the use, while such an unauthorized use should be considered 'less fair' when there is a ready market or means to pay for the use." *Amer. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 931 (2d Cir. 1994). Defendant does not dispute they had a way to pay for "Rocky Top" had they tried.

Defendant gets a lot of mileage out of House of Bryant's contention that House of Bryant had denied a licensing request to defendant in the past. "Moreover, one can only interpret this language to mean that Plaintiff wishes to choose to withhold licensing of 'Rocky Top' for programs that portray Tennessee, its mountains, and its citizens—the subjects of 'Rocky Top'- in a light that Plaintiff today may claim calls into question the image perpetuated by the song."[7]

---

[7] Defendant dramatically overstates the "negative" way "Phantom Hitman" portrays residents of the state of Tennessee. The population, as a whole, is portrayed relatively neutrally. Further, "Phantom Hitman" features interviews of residents of Knoxville, TN, some of whom are quite prominent. Obviously, defendant wants to argue

17

Doc. No. 7, p. 14. This contention is, frankly, absurd. First, there is no rule stating that a defendant's use of a copyrighted work is fair use simply because it was refused a license for another program in the past. Such a rule would cede control of musical compositions away from their owners, since a music publisher would have no choice but to license the composition to anyone who asks (for any price) or have the spurned licensee use it for free based on the publisher's "refusal" to grant a license. Moreover, as stated above, it is far from clear that criticism of "Tennessee, its mountains, and its citizens" is a proper "fair use" of the song "Rocky Top," a song which is owned by none of those entities.

However, the court need not even contemplate those issues. House of Bryant *did* offer to license defendant use of "Rocky Top" as soon as it became aware of defendant's use in "Phantom Hitman."[8] *See* Attached Declaration of Richard S. Busch (Busch Decl.), Exhibit B., December 3, 2008 letter from Susan Jenkins at House of Bryant to Abbe Raven at A&E Television Networks. The letter from Ms. Jenkins to AETN states:

> It has been brought to our attention that the above mentioned show [City Confidential, Episode 122-Knoxville, TN: Phantom Hitman] has used a song that we publish. The song is "Rocky Top" and is used during a scene that shows the UT football team. We have not issued a license for this use. We would greatly appreciate it if someone could contact us **so that we can issue the appropriate license agreement** and collect the appropriate fees for this use.

*Id.* (emphasis added).

House of Bryant did not "choose to withhold licensing of 'Rocky Top,'" defendant was offered a license, <u>after they used "Rocky Top" without permission</u>, and has simply refused to pay the fee. Defendant's claim to have created a "documentary" or "news" program misses the point entirely. This is exactly what the Supreme Court was referring to in *Harper & Row Publishers*:

---

"Phantom Hitman" is a scathing portrait of Knoxville to drive home the potential reasons why House of Bryant would not want to license "Rocky Top," but viewing the program shows that to be anything but true.

[8] This fact alone highlights the importance of discovery in this case. Defendant did not bring this fact before the court, which crucially undermines their claims to a First Amendment defense.

18

defendant seeks to profit without paying the customary price. *Harper & Row Publishers, Inc.*, 471 U.S. at 562.

Defendant has used "Rocky Top" in precisely the same manner as House of Bryant. After their infringement was discovered, House of Bryant generously offered defendant a license. Defendant has refused that license, and, only afterward, created an *ad hoc* defense of their actions. It is not only "plausible," but quite likely House of Bryant will be able to show that defendant used "Rocky Top" in a way that harms House of Bryant's market.

### III. CONCLUSION

Plaintiff has stated a *prima facie* case of copyright infringement with which the defendant substantially agrees. In its Motion to Dismiss, defendant argues plaintiff cannot "plausibly" prove its use is not fair use. As set forth above, plaintiff has stated a more than plausible claim that defendant's use is not fair. Moreover, even judged against the higher "Motion to Dismiss" standard, there are facts in dispute regarding whether defendant's use is fair. For the foregoing reasons, defendant's motion should be denied.

HOUSE OF BRYANT
PUBLICATIONS, L.L.C.

DATED: September 3, 2009         By: _____
Richard S. Busch (TN BPR #14594)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
615/259-3456 (tel)
615/248-2860 (fax)
*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

      The undersigned hereby certifies that the foregoing document was electronically filed and served through the Court's system upon the following:

Robb S. Harvey (Tenn. BPR No. 011519)
Heather J. Hubbard (Tenn. BPR No. 023699)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
(615) 244-6380 (tel)
(615) 244-6804 (fax)

This 3rd day of September, 2009.

                                      /s/ Richard S. Busch
                                      Counsel for Plaintiff