## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| HOUSE OF BRYANT PUBLICATIONS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 3:09-0502** |
| | ) | **Judge Trauger** |
| A&E TELEVISION NETWORKS, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
### MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant A&E Television Networks ("AETN") respectfully submits this Reply Brief in support of its Motion to Dismiss for failure to state a claim. Plaintiff[1] attempts to introduce unnecessary confusion into the Court's examination of the clear facts and law involved. In doing so, and even while accusing AETN of evading disclosure of information relevant to this case, Plaintiff seeks to prevent the Court from viewing the very episode of the television documentary series *City Confidential* entitled "Knoxville, TN: Phantom Hitman" (the "Program") that forms the basis of Plaintiff's claims. As the Court will see upon viewing such Program, and for the reasons articulated in this Reply and discussed in AETN's Memorandum of Law, AETN's use in the 48 minute Program of some scenes from the University of Tennessee – Knoxville ("UTK") football stadium during a game, which incorporate twelve seconds of ambient stadium noise

---

[1] Plaintiff admits that "the Bryants" – and not the House of Bryant Publications, LLC, the plaintiff in this case – are the owners of the composition "Rocky Top." *See* Plaintiff's Response to Motion to Dismiss (hereinafter "Resp.") at 2 n. 1. Plaintiff's references to public record documents available online at www.copyright.gov further confirm that it is not the owner of the copyright at issue. Plaintiff cites to no case in support of the proposition that an "administrator" has standing to bring a lawsuit on behalf of the owners. Even if an exclusive licensing agent had standing to sue – and it does not – Plaintiff has not even attached to the Complaint any document or agreement with the owners that would allow this Court to determine whether Plaintiff is in fact the exclusive administrator. That issue, however, does not need to be resolved in order to dismiss the Complaint.

1

Dockets.Justia.com

including the marching band playing "Rocky Top" (the "Song"), constitutes fair use as a matter of law.

## ARGUMENT

### A.    Standard of Law

Plaintiff spends some pages discussing the proper standard for summary judgment, which is irrelevant. It is irrefutable that this Court may consider on a motion to dismiss materials that are incorporated by reference in, or integral to, the Complaint, as well as public records and other documents otherwise appropriate for the taking of judicial notice. Wyser-Pratte Management Co., Inc. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005); Weiner v. Klaise and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997). Thus, the materials submitted by AETN are suitable for consideration at this stage, and do not convert AETN's Motion to Dismiss to a motion for summary judgment. *See* id.

### 1.    There is no confusion regarding the standard for dismissal set forth in Twombley and Iqbal.

Plaintiff accuses AETN of attempting to "take advantage of confusion" surrounding the pleading standard for a motion dismiss established by the recent United States Supreme Court cases Bell Atlantic Corp. v. Twombley, 550 U.S. 554 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). *See* Resp. at 5. Plaintiff is attempting to introduce a specter of "confusion" where none exists. *See* id. In fact, this very Court has articulated and applied the Twombley and Iqbal standard on a number of occasions. *See, e.g.*, Haliburton-Bryant v. Middle Tennessee State Univ., 2009 WL 2851299 (M.D. Tenn. Aug. 31, 2009) (dismissing claim involving racial discrimination based on the standard established by Twombley and Iqbal); Risser v. Metro. Gov't of Nashville and Davidson County, 2009 WL 1974747 (M.D. Tenn. July 7, 2009) (dismissing state law and Governmental Tort Liability Act claims based on the standard

established by <u>Twombley</u> and <u>Iqbal</u>.)  In <u>Risser</u>, this Court discussed the appropriate standard at length.  As summarized by the Court:

> "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
>
> Further . . . determining "facial plausibility" is a "context-specific task" in which the reviewing court must "draw upon its judicial experience and common sense."  Where, using this background, the court finds that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"

<u>Risser</u>, 2009 WL 1974747 at *3 (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  AETN is not seeking to "take advantage of confusion" or stretch the motion to dismiss standard past its proper limits.  Rather, AETN merely requests that the Fed. R. Civ. P. 12(b)(6) standard articulated by the United States Supreme Court be applied in this case.  *See* <u>id</u>.

**2.     The Court should not accept as true legal conclusions in the Complaint.**

Although courts are required to accept well pleaded facts of a complaint as true in evaluating a motion to dismiss, courts need not accept as true the legal conclusions included in a complaint.  <u>Iqbal</u>, 129 S. Ct. at 1950.  In <u>Iqbal</u>, the United States Supreme Court elaborated on this crucial concept, which this Court has summarized as follows:

> First, "**the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions**.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim under the federal rules. . . .
>
> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

3094896

<u>Risser</u>, 2009 WL 1974747 at *3 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949-50) (emphasis added).  The Sixth Circuit has followed this approach and recently affirmed dismissal of a trademark infringement claim where the "facts" alleged in plaintiff's complaint amounted to mere legal conclusions.  *See* <u>Hensley Manufacturing, Inc. v. Propride, Inc.</u>, __ F.3d __, 2009 WL 2778220 (6th Cir. Sept. 3, 2009) (to be published) (holding that even though plaintiff alleged "a strong likelihood of confusion in the marketplace as to source" from defendant's use of plaintiff's trademark in advertising, the exhibits to the complaint made clear that the use did not signify the source of products, there was absolutely no possible confusion, and defendant's use was a "fair use" as a matter of trademark law).

Clear examples of legal conclusions in Plaintiff's Complaint, unsupported by well-pleaded factual allegations, include the following attempts to plead around the fair use protection statutorily proscribed in the Copyright Act:

- "Defendant has copied a **recognizable, distinct and important** section of 'Rocky Top' in their program 'Phantom Hitman.'"  Compl. ¶ 25.

- "Defendant's use of 'Rocky Top' in 'Phantom Hitman' **does not educate viewers about, comment upon or criticize** the musical composition 'Rocky Top.'"  Compl. ¶ 28.

- "Defendant's use is **not transformative** of 'Rocky Top.'"  Compl. ¶ 29.

- "Defendant uses a **commercially significant, non-*de minimis* portion of 'Rocky Top'** in 'Phantom Hitman.'"  Compl. ¶ 30.

(Emphasis added).  Plaintiff seems to argue that its assertion of legal conclusions is the equivalent of establishing matters of fact.  The Court need not accept these and other legal conclusions of the Complaint as true in determining whether AETN's use constitutes a fair use as a matter of law for purposes of AETN's Motion to Dismiss.

> **3.     The Court additionally should not accept as true factual allegations of the Complaint that contradict documents incorporated by reference thereto.**

Plaintiff mischaracterizes AETN's argument as merely disagreeing with the facts as stated in the Complaint and seeking to supersede Plaintiff's descriptions of the allegedly infringing use with its own. *See* Resp. at 6. Instead, AETN simply asks this Court to view the Program in question and "draw upon its judicial experience and common sense" to determine independently whether Plaintiff's description of the use in its Complaint is accurate. *See* Risser, 2009 WL 1974747 at *3 (quoting Iqbal, 129 S. Ct. at 1950). It is well settled that on a motion to dismiss, the Court should disregard "'facts' or conclusions which contradict documentary evidence appended to, or referenced within, the plaintiff's complaint." Mulbarger v. Royal Alliance Associates, Inc., 10 Fed. Appx. 333, 336, 2001 WL 549441 at *3 (6th Cir. May 14, 2001) (citing Weiner v. Klais and Co., 108 F.3d at 89; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1997)); *see also* HMS Property Management Group, Inc. v. Miller, 69 F.3d 357 (Table) (6th Cir. 1995), 1995 WL 641308 at *3 (6th Cir. Oct. 31, 1995) (citation omitted) (court "may disregard allegations contradicted by facts established in exhibits attached to the pleading" and upholding dismissal of breach of contract claim where facts alleged in the complaint were contradicted by the contract itself); The Mengel Co. v. Nashville Paper Prods. And Specialty Workers Union No. 513, 221 F.2d 644, 647 (6th Cir. 1955) (where contract forming basis of plaintiff's claims contradicts factual allegations of its complaint, the contract controls).

As the Program is referenced throughout Plaintiff's Complaint and forms the entire factual basis of Plaintiff's claims, the Court may take its contents into consideration when determining whether Plaintiff has met the threshold pleading requirements established by Twombly and Iqbal. Because Plaintiff's conclusory statements of fact in the Complaint do not

correspond with the reality of the Program itself, those facts are not "well pleaded" and should therefore be excluded from consideration. *See* Mulbarger, 10 Fed. Appx. at 336.

**B.     The Fair Use Doctrine Bars Plaintiff's Claims.**

Fortunately, Plaintiff agrees with AETN's statement of the applicable law in determining whether AETN's inclusion of 12 seconds of "Rocky Top" in the Program (half of which includes narration) constitutes fair use as a matter of law. *See* Resp. at 7. Nonetheless, relying on factually incongruous as well as outdated cases, Plaintiff in essence asserts that *any use* of the song "Rocky Top" would constitute copyright infringement – thus eliminating the crucial doctrine of fair use entirely. However, as fair use is "an 'integral part of copyright, whose observance is necessary to achieve the objectives of that law,'" Plaintiff's arguments fail. Blanch v. Koons, 467 F.3d 244, 250 (2d Cir. 2006) (quoting Pierre N. Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105, 1107 (1990)); *see also* Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 575 (1994) ("From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose, 'To promote the Progress of Science and useful Arts.'" (quoting U.S. Const., Art. I, § 8, cl. 8)).

**1.     The Program's use is transformative, and its commercial nature is of little consequence.**

The Program clearly is transformative. The parties agree that the first factor in the fair use analysis involves a study of "the purpose and character of the use, including whether such use is of a commercial nature." 17 U.S.C. § 107; Resp. at 7. This factor is "the heart of the fair use inquiry." Blanch, 467 F.3d at 251 (quoting Davis v. The Gap, Inc., 246 F.3d 152, 174 (2d Cir. 2001)). Although Plaintiff argues that this inquiry simply ends with the fact that Plaintiff issues synchronization licenses for audiovisual works (a category that encompasses the Program), it does not. The true focus of this test is "whether the new work merely 'supersedes

6

the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message . . . , in other words, whether and to what extent the new work is 'transformative.'" <u>Id</u>. (quoting <u>Campbell</u>, 510 U.S. at 579).  As articulated by the Second Circuit, and repeated by Plaintiff, "[I]f the secondary use adds value to the original – if [the allegedly infringed work] is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings – this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society." <u>Castle Rock Entm't v. Carol Publ'g Group</u>, 150 F.3d 132, 141 (2d Cir. 1998); Resp. at 9.

The Program, which itself constitutes a protectable creative work under the Copyright Act, does just this.  As more fully explained in AETN's prior Memorandum, the Program incorporates about 12 seconds of "Rocky Top," as played by the UTK "Pride of the Southland" marching band during a UTK football game over which narration is heard and several football and other Knoxville-related scenes are shown (including the "Rocky Top Books East"), and as a part of a larger creative whole.  AETN's use of this sequence is transformed with new insights and understandings because it illustrates the culture of Knoxville, Tennessee and UTK in the larger context of depicting true-life events that occurred in that locale, and it comments upon and undermines the simple, cheerful existence portrayed by both the Song itself and activities which are intrinsically associated with Knoxville – college sports.[2]  Because each of these purposes relates to the cultural significance of the song "Rocky Top" itself, they necessarily differ from the purposes of the Song's own authors in writing it.  *See* <u>Blanch v. Koons</u>, 467 F.3d at 252-53

---

[2] Plaintiff's argument that the Program's inclusion of only an instrumental version of the Song precludes it from constituting commentary thereon is untenable.  As a popular song, and even an official state song of Tennessee, the tune of "Rocky Top" conjures its lyrics.  In fact, it is generally known within the jurisdiction that the crowd at UTK football games knows this song and sings along in when it is played by UTK's marching band.

3094896

(noting that a "different purpose and meaning" for use is a "crucial" hallmark of a transformative work); *see also* <u>Bill Graham Archives v. Dorling Kindersley, Ltd.</u>, 448 F.3d 605, 610-11 (2d Cir. 2006) (finding that defendant's use of images of plaintiff's copyrighted posters for context in a biographical book was transformative, because it served "a purpose separate and distinct from the original artistic and promotional purpose for which the images were created"). The fact that the Program as a whole is not "about" football or UTK (and neither is "Rocky Top") has no bearing whatsoever on this analysis. *See* Resp. at 10. Knoxville is in some respects "about" UTK and college sports, and the song "Rocky Top" is part of that cultural fabric – in part, the song "Rocky Top" and Knoxville are inseparable and certainly subject to comment and context in a documentary about events that occurred in Knoxville.

Moreover, Plaintiff's argument that the Program must explicitly criticize "Rocky Top" itself in order to constitute a transformative work is erroneous. In fact, in <u>Bill Graham Archives</u>, the Second Circuit dismissed this very argument, finding that the defendant's "use of the disputed images is transformative both when accompanied by referencing commentary and when standing alone" because the poster images "serve as historical artifacts" providing context for the subject matter of the book and "enhanc[ing] the reader's understanding of the biographical text." 448 F.3d at 609-11; *see also* <u>Hofheinz v. A&E Television Networks</u>, 146 F. Supp. 2d 442 (S.D.N.Y. 2001) (finding defendant's incorporation of a twenty-second snippet from a movie trailer in a documentary program about its star, as opposed to the movie itself, to be transformative).

Cases cited by Plaintiff in support of its argument that the Program is "non-transformative" merely serve to illustrate the difference between a transformative use, such as

the Program, and a use that "merely supersedes the objects" of the original work.[3]  Although

Plaintiff attempts to wholly distinguish <u>Lennon v. Premise Media Corp.</u>, 556 F. Supp. 2d 310

(S.D.N.Y. 2008), that case bears far more similarity to the case at hand than any case cited by

Plaintiff.  Both <u>Lennon</u> and the instant case involve transformative documentary programs,

utilize excerpts of popular songs to provide cultural context within a broader discussion, and

provide commentary (whether explicitly or implicitly) on the subject matter of those songs.  *See*

<u>id</u>.

Plaintiff, further, would ask the Court to assume that because the Program was broadcast

over AETN, a commercial network, that fact is sufficient to establish a lack of fair use, or a

presumption thereof.  *See* Resp. at 8.  The cases cited in AETN's Memorandum at pages 9 and

10 refute this argument.  *See* <u>Campbell</u>, 510 U.S. at 577, 584 (noting that the fair use inquiry "is

not to be simplified with bright-line rules" and instructing that commercial nature is insufficient

to establish a presumption against fair use); <u>Blanch</u>, 467 F.3d at 254 (noting that the commercial

nature of a transformative work has little impact on the fair use analysis).  Thus, because the

Program's use of the marching band's playing of "Rocky Top" at the football game is

transformative, the fact that the Program was aired on a commercial network is of little

relevance.  <u>Id</u>.

---

[3] *See* <u>Telerate Sys., Inc. v. Caro</u>, 689 F. Supp. 221 (S.D.N.Y. 1988) (finding no fair use where the sole purpose of defendant's software program was to allow users to copy information from Plaintiff's database); <u>Castle Rock Entm't v. Carol Publ'g Group</u>, 150 F.3d 132 (2d Cir. 1998) (finding no fair use where subject matter of defendant's quiz book was entirely taken from plaintiff's *Seinfeld* television series and involved little originality); <u>Princeton Univ. Press v. Michigan Doc. Servs.</u>, 99 F.3d 1381 (6th Cir. 1996) (finding no fair use where defendant copy center produced and sold course materials *comprised exclusively* of excerpts from unlicensed copyrighted works); <u>Zomba Enters. v. Panorama Records, Inc.</u>, 491 F.3d 574 (6th Cir. 2007) (finding no fair use where defendant karaoke company hired musicians to specifically replicate numerous musical compositions, produced copies of such recordings, and sold them for use in karaoke); <u>Harper & Row Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539 (1985) (finding no fair use where defendant magazine misappropriated a copy of President Ford's not-yet-published biography, featured central excerpts of the book in its magazine, and specifically marketed the issue as "scooping" subsequent publications).

## 2. The nature of the copyrighted work is largely insignificant.

AETN does not dispute that "Rocky Top" is a creative work. *See* Resp. at 11. However, as "this second factor . . . typically recedes into insignificance in the greater fair use calculus," it is of little concern to the Court. 4 Melvin B. Nimmer & David Nimmer, Nimmer on Copyright § 13.05[A][2][a]; *see also* <u>Castle Rock Entm't</u>, 150 F.3d at 144 (noting that "this factor may be of less (or even no) importance when assessed in the context of certain transformative uses").

## 3. The amount and substantiality of portion used is minimal.

For purposes of determining the amount and substantiality of the portion used for the third fair use factor, Plaintiff stubbornly continues to insist that the Court accept as true its legal conclusion that the portion of "Rocky Top" used in the Program is "recognizable, distinct and important." *See* Resp. at 12-13. As discussed above, the Court must disregard Plaintiff's "'legal conclusion[s] couched as . . . factual allegation[s].'" <u>Hensley Manufacturing, Inc.</u>, 2009 WL 2778220 at * 3 (6th Cir. Sept. 3, 2009) (quoting <u>Bell Atlantic Corp. v. Twombley</u>, 550 U.S. 554, 555 (2007)). The Court will see from its own review of the Program the accurate facts upon which this determination may be based: that "Rocky Top" is heard as background noise against crowd scenes, that the entire length the Song plays (whether obscured or not) is twelve seconds, that six of those seconds are obscured by crowd noise and narration, and that the Song excerpt is immediately followed by a shot of a local Knoxville souvenir/book store named "Rocky Top Books East."

As the correct measure is whether the copying is "reasonable in relation to the purpose of copying," the Court's determination on this factor should be informed by the transformative nature of the Program. <u>Campbell</u>, 510 U.S. at 586-87.[4] Because none of the cases cited by

---

[4] Plaintiff complains that Defendant's Motion fails to be informed by "the wisdom of Learned Hand." However, AETN respectfully would point out that the United States Supreme Court often considers the amount

Plaintiff to support its argument involves a transformative work, they are distinguishable. *See* Harper & Row Publishers, Inc., 471 U.S. 539 (finding substantial use where allegedly infringing magazine article whose purpose clearly supplanted the purpose of excerpted book – and, in fact, had been touted as "scooping" such book – included thematically important, but brief passages thereof); Telerate Sys., Inc., 689 F. Supp. 221 (finding substantial use where defendant claimed that users of its software program would only access small amounts of information from Plaintiff's database, where the sole purpose of defendant's software program was to allow users to copy information from Plaintiff's database).[5]

### 4.    AETN's fair use does not affect the potential market or value of the Song.

The appropriate standard for evaluation of the fourth fair use factor is whether the allegedly infringing use "usurp[s] a 'market that properly belongs to the copyright-holder.'"[6] Hofheinz v. AMC Productions, Inc., 147 F. Supp. 2d 127, 140 (E.D.N.Y. 2001).   Plaintiff does not claim that AETN's use of the "Rocky Top" excerpt has negatively affected public demand for "Rocky Top."  Instead, it claims that AETN's use will influence others to use the Song in audiovisual works without obtaining a synchronization license from Plaintiff.  Resp. at 15. Plaintiff's re-interpretation of the applicable standard for evaluating the fourth fair use factor would effectively eviscerate the entire doctrine of fair use.  Plaintiff essentially argues that the use of "Rocky Top" in any audio-visual work would necessarily negatively impact its potential

---

copied as compared to the allegedly infringing work as a whole. *See* Campbell, 510 U.S. at 589 (discussing defendants' contribution to the allegedly infringing song in comparison to the amount copied); *Nation Enters.*, 471 U.S. at 565-66 (quoting the same language cited by Plaintiff, but nonetheless considering the length of the allegedly infringing article as a whole in comparison to its copied portion for purposes of the third fair use factor).

[5] Plaintiff's arguments disputing the *de minimis* nature of AETN's use are similarly unavailing. *See* Resp. at 14-15.  Plaintiff's claim that AETN may not simultaneously use a portion of the Song that is "easily recognizable" and use such a small amount of the Song that such use is *de minimis* is a logical fallacy.  *See* id.

[6] Although Plaintiff espouses that this is the most important factor, at least one case cited by Plaintiff notes that the United States Supreme Court, in Campbell, "apparently abandon[ed] the idea that any factor enjoys primacy." Am. Geophysical Union v. Texaco, Inc., 60 F.3d 913, 926 (2d Cir. 1994).

11

market for the work, simply because Plaintiff "is in the business of licensing musical compositions, including 'Rocky Top.'" See id.

Other courts faced with Plaintiff's conclusory argument have dismissed it outright. *See, e.g.,* id. at 140-41 (E.D.N.Y. 2001); Hofheinz v. A&E Television Networks, 146 F. Supp. 2d 442, 449-50. In the words of one leading decision:

> Plaintiff claims that she will lose the licensing value of her copyrighted works if defendants' use is deemed "fair." Plaintiff's argument is flawed. First, plaintiff's claim of market usurpation is misguided; the question is what effect the exhibition of defendant's Documentary will have on demand for plaintiff's infringed works themselves, not the effect the Documentary will have on her ability to license those works in the future. Second, plaintiff's argument, if carried to its logical conclusion, would eviscerate the affirmative defense of fair use since every copyright infringer seeking the protection of the fair use doctrine could have potentially sought a license from the owner of the infringed work. . . . Third, plaintiff's argument fails to acknowledge that a finding of fair use here does not translate to a finding of fair use in each instance where plaintiff's copyrighted works have been infringed. Thus, potential infringers of plaintiff's copyrighted works . . . are likely to seek a license to avoid entering the murky realm of fair use law during the course of litigation.

Hofheinz v. AMC Productions, Inc., 147 F. Supp. at 140 (E.D.N.Y. 2001) (denying preliminary injunction by copyright holder of monster movies against producers of television documentary about that genre based on a finding of fair use).

Furthermore, although courts' analysis of this fourth factor may include consideration of the "impact on potential licensing revenues for 'traditional, reasonable, or likely to be developed markets,'" AETN's transformative use of the "Rocky Top" excerpt will not negatively impact such licensing because it necessarily serves a different purpose than the original work. Bill Graham Archives, 448 F.3d at 614 (where a plaintiff merely asserts it has established a licensing market, such an argument does not show that defendant's use will cause "impairment to a traditional, as opposed to a transformative market"). Where the allegedly infringing work is transformative, "a copyright holder cannot prevent others from entering fair use markets merely

'by developing or licensing a market for parody, news reporting, educational or other transformative uses of its own creative work.'" Id. at 615 (quoting Castle Rock, 150 F.3d at 146 n.11).

Finally, Plaintiff argues that AETN was offered, but refused, a license for use of "Rocky Top" more than four years *after* the Program was first broadcast. Resp. at 18-19. Because the letter quoted by Plaintiff and attached as Exhibit B to Plaintiff's Response was not attached to the Complaint and is neither incorporated by reference in, or integral to, the Complaint, nor appropriate for judicial notice under Fed. R. Evid. 201, it is not proper for consideration upon AETN's Motion to Dismiss.[7] Wyser-Pratte Management Co., Inc. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005); Weiner v. Klaise and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997). Even if the Court were to consider Plaintiff's sideways effort to amend its Complaint with new allegations, as Plaintiff well knows, the law is well settled that a defendant's refusal to obtain a license for its fair use of a copyrighted work is ***not*** evidence that its use was not, in fact, fair. *See* Campbell, 510 U.S. at 585 n.18 (noting that a party's request for license is not evidence that its use was not fair); Bill Graham Archives, 448 F.3d at 614 (noting that plaintiff's willingness to offer a license to defendant for its use did not weigh in plaintiff's favor for purposes of the fourth fair use factor). If a defendant's affirmative request for a license *prior* to a use cannot be used as evidence against fair use, then obviously a defendant's declining to pay a thinly-veiled settlement demand *after* the use cannot either. Otherwise, a plaintiff could completely negate the fair use doctrine by simply offering a license to the fair user after it learns of such use and before filing a lawsuit. Plaintiff's multiple attempts to articulate rules that would defeat any fair use demonstrates the weakness of its arguments.

---

[7] Again, Plaintiff is attempting to create complexity where none exists. Plaintiff seeks to introduce evidence not permitted on a motion to dismiss in an attempt to convert AETN's motion to dismiss to one for summary judgment and to avoid the Twombly and Iqbal standard.

## CONCLUSION

WHEREFORE, Defendant AETN respectfully requests that this Court GRANT its

Motion to Dismiss the Complaint for failure to state a claim.


Respectfully submitted,

/s/ Robb S. Harvey
Robb S. Harvey (Tenn. BPR No. 011519)
Heather J. Hubbard (Tenn. BPR No. 023699)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Phone: (615) 244-6380
Facsimile: (615) 244-6804
E-mails: robb.harvey@wallerlaw.com and
heather.hubbard@wallerlaw.com
*Counsel for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Reply Brief was electronically filed with the Court and served via the Court's Electronic Case Filing system on this 22nd day of September, 2009, to the following counsel of record:

Richard S. Busch
King & Ballow
315 Union Street, Suite 1100
Nashville, TN 37201


/s/ Robb S. Harvey
Counsel for Defendant

3094896