

Slip Copy, 2009 WL 2851299 (M.D.Tenn.)
**(Cite as: 2009 WL 2851299 (M.D.Tenn.))**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Tennessee,
Nashville Division.
Constance HALIBURTON-BRYANT, Plaintiff,
v.
MIDDLE TENNESSEE STATE UNIVERSITY and
Comdata Corporation, Defendants.
**Civil No. 3:08-0269.**

Aug. 31, 2009.

Constance Haliburton-Bryant, Murfreesboro, TN,
pro se.

Gregory W. Holt, Tennessee Attorney General's Of-
fice, Kevin C. Baltz, Miller & Martin PLLC,
Nashville, TN, for Defendants.

*ORDER*

ALETA A. TRAUGER, District Judge.

*1 On July 20, 2009, the Magistrate Judge issued a
Report and Recommendation (Docket No. 46), to
which no timely objections have been filed. The
Report and Recommendation is therefore **ACCEP-
TED** and made the findings of fact and conclusions
of law of this court. For the reasons expressed
therein, it is hereby **ORDERED** that the defend-
ant's Motion to Dismiss (Docket No. 7) is **GRAN-
TED**, and this case is **DISMISSED WITH PRE-
JUDICE.**

It is so **ORDERED.**

*REPORT AND RECOMMENDATION*

JOHN S. BRYANT, United States Magistrate Judge.

On March 7, 2008, Plaintiff, proceeding *pro se* and

*in forma pauperis,* filed her Complaint in this Court
(Docket Entry No. 1). Defendant, Middle Tenness-
ee State University ("MTSU"), filed a Motion to
Dismiss on March 18, 2008. (Docket Entry No. 7).
Subsequent to Plaintiff's motions to amend (Docket
Entries Nos. 12, 28, 31) and MTSU's Motion for a
More Definite Statement (Docket Entry No. 25),
the undersigned issued a Memorandum and Order
on February 6, 2009 in which Plaintiff was granted
until February 27, 2009, to file an amended com-
plaint. The undersigned noted that the amended
complaint would "supersede and replace all prior
complaints" and "contain a statement of all claims
the plaintiff seeks to assert in this lawsuit." (Docket
Entry No. 35 at 2). Plaintiff was further reminded
that Rule 8 of the Federal Rules of Civil Procedure
"provides that a pleading that states a claim for re-
lief must contain a short and plain statement of the
grounds for the Court's jurisdiction, a short and
plain statement of the claim showing that the plead-
er is entitled to relief, and a demand for the relief
sought." *Id.* On February 27, 2009, Plaintiff filed an
amended complaint. (Docket Entry No. 36).

Currently pending is Defendant's Motion to Dis-
miss Amended Complaint (Docket Entry No. 38),
supported by a memorandum (Docket Entry No.
39). Defendant, pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure,
has moved to dismiss Plaintiff's Amended Com-
plaint for lack of subject matter jurisdiction and
failure to state a claim upon which relief can be
granted. (Docket Entry No. 39). Plaintiff has re-
sponded to the motion (Docket Entry No. 41). Upon
consideration of these papers, and for the reasons
given below, the Magistrate Judge recommends that
Defendant's motion be GRANTED, and that this
case be DISMISSED for lack of subject matter jur-
isdiction and failure to state a claim.

**I. Factual Background**

Plaintiff, a 60 year old African American, is a Mas-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Slip Copy, 2009 WL 2851299 (M.D.Tenn.)
(Cite as: 2009 WL 2851299 (M.D.Tenn.))

ter's candidate in the Criminal Justice Administration Department of Middle Tennessee State University. (Docket Entry No. 36 at ¶¶ 2, 3). She appears to allege that the Defendant, Middle Tennessee State University ("MTSU"), denied her financial aid and improperly administered her student records because of her race. *Id.* at ¶¶ 4, 5. By not receiving financial aid and allegedly having her records improperly administered, she was not able to fulfill the requirements necessary to obtain her Master's degree. *Id.* Furthermore, she claims that MTSU faculty used "pejorative racial epithets ... without meritorious discussion" thereby confirming her "perception that a high rate of social deviance is present within the administrative character at MTSU." *Id.* at ¶ 6. In addition, she alleges a conspiracy by white, Anglo-Saxon, Protestants in Murfreesboro and Rutherford County, Tennessee to carry out de facto "racialized class control." *Id.* at ¶¶ 7-13). As a remedy for the alleged discrimination in educational opportunity, Plaintiff seeks "to be made whole" and to have "federal protective intervention ... throughout the duration of these public processes." *Id.* at ¶ 15.

## II. Conclusions of Law

### A. Standard of Review

*2 Defendant's first argument for dismissal is that the action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. (Docket Entry No. 39 at ¶ 6). In accordance with Fed.R.Civ.P. 8, a Plaintiff must set forth the grounds for the Court's jurisdiction in her complaint. When subject matter jurisdiction is challenged by Fed.R.Civ.P. 12(b)(1), the plaintiff has the burden of establishing jurisdiction to survive the motion. *Rogers v. Stratton Industries,* 798 F.2d 913, 915 (6th Cir.1986).

Defendant's second argument for dismissal is that the action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Docket Entry

No. 39 at ¶ 6). In examining a Complaint under Fed.R.Civ.P. 12(b)(6), the Court must accept as true all of the Plaintiff's well-pleaded factual allegations and resolve all doubts in the Plaintiff's favor. *See Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). While a complaint need not contain detailed factual allegations, the Plaintiff must provide the grounds for his entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The factual allegations supplied must be enough to show a plausible right to relief. *Id.* at 570. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988).

Since Plaintiff is pro se, the allegations of her complaint must be liberally construed in determining whether it fails to state a claim upon which relief can be granted. *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991). Pro se litigants should not be denied access to the courts merely because they lack some degree of legal training. *Id.* However, the liberal treatment granted to pro se litigants is not without limits. *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996). Basic pleading rules still apply for pro se litigants, as bald assertions and personal opinions will not suffice. *See Wells v. Brown,* 891 F.2d 591, 594. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (citing *Twombly,* 550 U.S. at 555).

### B. Analysis

Even construing Plaintiff's original and amended complaints liberally, they neither refer to any federal law to establish federal question jurisdiction un-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Slip Copy, 2009 WL 2851299 (M.D.Tenn.)
(Cite as: 2009 WL 2851299 (M.D.Tenn.))

der 28 U.S.C. § 1331, nor allege diversity of citizenship under 28 U.S.C. § 1332. The Sixth Circuit has affirmed the dismissal of a pro se litigant's complaint for lack of subject matter jurisdiction when the complaint did not mention any federal law or allege diversity of citizenship, even after the pro se litigants were granted the right to amend their complaint. *Turner v. Metropolitan Sav. Bank,* No. 98-3186, 1999 WL 454696, at *1 (6th Cir. June 21, 1999). In *Turner,* the pro se litigants failed to specify how the defendant "violated any particular statute or regulation, and failed to plead specific facts forming the basis of subject matter jurisdiction," even in their response to defendant's motion to dismiss. *Id.*

**\*3** In this case, the Court granted Plaintiff ample time to amend her pleadings and notified her in its Order and Memorandum that she must provide a "short and plain statement of the grounds for the court's jurisdiction" in accordance with Fed.R.Civ.P. 8. (Docket Entry No. 35 at 2). However, she still failed to set forth any grounds for the Court's jurisdiction in her amended complaint. In her answer to the motion to dismiss, Plaintiff does not refer to any particular statute to establish jurisdiction, but claims that federal jurisdiction is necessary because the allegedly wrongful acts "occurred in publicly funded, bureaucratic settings administered as units of government" and because "state court legal norms" are "deconstructive of the federal protections in place for the nature of [her] claims." (Docket Entry No. 41 at 10). While pro se litigants do receive the benefit of a liberal construction of their pleadings, Plaintiff's complaint simply does not offer any short and plain jurisdictional statement for the Court to construe.

In addition, even assuming, arguendo, that the pleadings could be liberally construed as invoking 42 U.S.C. § 1983, Plaintiff's complaint would still be subject to dismissal for failure to state a claim. Plaintiff's complaint does not contain sufficient factual allegations, even assuming the allegations are true, to survive Defendant's 12(b)(6) motion to dismiss. The factual allegations of a complaint "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. While Fed.R.Civ.P. 8 may not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ---U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 555). Plaintiff claims that she was denied access to her financial aid and that her student records were improperly administered-obstructing her ability to finish her Master's program-yet she fails to provide any specific dates and times regarding these actions. (Docket Entry No. 36 at ¶¶ 4, 5). More importantly, she does not provide any facts upon which relief could be granted, for example whether Defendant treated similarly situated students who were not members of a protected class differently concerning financial aid. Plaintiff merely makes bare, disjointed accusations about systemic racial inequalities within MTSU, the city of Murfreesboro, and Rutherford County. *Id.* at ¶¶ 7-15. The pleadings identify no specific causes of action or individuals who harmed her.

Assuming again, arguendo, that Plaintiff could be deemed to have filed suit under 42 U.S.C. § 1983, to prevail under this statute Plaintiff must establish that she was "deprived of a right secured by the Constitution or laws of the United States[.]" *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994) (citing *Flagg Bros. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). Plaintiff has not met this standard as she has not specified any constitutional rights which have been violated in her Complaint. While pro se litigants are provided a more liberal review of their pleadings, such leniency should not force the Court to speculate as to the nature of Plaintiff's claim or surmise the facts in support of conclusory accusations. *See Wells,* 891 F.2d at 594. In this instance, the Court has repeatedly provided Plaintiff an opportunity to amend her pleadings and notified her of the procedural requirements necessary at the pleading stage. (Docket Entry Nos. 12, 17, 28, 31, 35). The undersigned

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2851299 (M.D.Tenn.)
(Cite as: 2009 WL 2851299 (M.D.Tenn.))

Magistrate Judge finds that Plaintiff's Complaint, as amended, should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## III. Recommendation

*4 For the reasons set out above, the Magistrate Judge respectfully RECOMMENDS that Defendant's motion to dismiss be GRANTED, and that this case be DISMISSED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Cowherd v. Million,* 380 F.3d 909, 912 (6th Cir.2004) (en banc).

**ENTERED** this 20th day of July, 2009.

M.D.Tenn.,2009.
Haliburton-Bryant v. Middle Tennessee State University
Slip Copy, 2009 WL 2851299 (M.D.Tenn.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.



--- F.3d ----, 2009 WL 2778220 (C.A.6 (Mich.))
**(Cite as: 2009 WL 2778220 (C.A.6 (Mich.)))**

**H**
Only the Westlaw citation is currently available.

United States Court of Appeals,
Sixth Circuit.
HENSLEY MANUFACTURING, Incorporated,
Plaintiff-Appellant,
v.
PROPRIDE, INCORPORATED; Sean Woodruff;
James C. Hensley, Defendants-Appellees.
No. 08-1834.

Argued: June 19, 2009.
Decided and Filed: Sept. 3, 2009.

**Background:** Company that registered trailer hitch
designer's last name as a trademark brought trade-
mark infringement action against competitor selling
designer's new trailer hitch, individual that formed
competitor, and the trailer hitch designer. The
United States District Court for the Eastern District
of Michigan, Marianne O. Battani, J., 622
F.Supp.2d 554, granted defendants' motion to dis-
miss. Trademark owner appealed.

**Holdings:** The Court of Appeals, McKeague, Cir-
cuit Judge, held that:
(1) competitor's use of designer's name did not cre-
ate a likelihood of confusion regarding the source
of competitor's products, and
(2) competitor was entitled to fair use defense to
trademark infringement.

Affirmed.

West Headnotes

**[1] Federal Courts 170B ⚖═762**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk759 Theory and Grounds of De-
cision of Lower Court

            170Bk762 k. Grounds for Sustain-
ing Decision Not Relied Upon or Considered. Most
Cited Cases
A court of appeals may affirm a district court's dis-
missal of a plaintiff's claims on any grounds, in-
cluding grounds not relied upon by the district court.

**[2] Federal Civil Procedure 170A ⚖═673**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(B) Complaint
         170AVII(B)1 In General
            170Ak673 k. Claim for Relief in Gen-
eral. Most Cited Cases
Although rule requiring a complaint to contain a
short and plain statement of the claim does not re-
quire detailed factual allegations, it does require
more than labels and conclusions or a formulaic re-
citation of the elements of a cause of action.
Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⚖═1772**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)3 Pleading, Defects In, in Gen-
eral
            170Ak1772 k. Insufficiency in Gener-
al. Most Cited Cases

**Federal Civil Procedure 170A ⚖═1835**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1827 Determination
               170Ak1835 k. Matters Deemed Ad-
mitted; Acceptance as True of Allegations in Com-
plaint. Most Cited Cases
To survive a motion to dismiss, a plaintiff must al-
lege facts that, if accepted as true, are sufficient to

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face. Fed.Rules Civ.Proc.Rule 8(a)(2), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⇌1772**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)3 Pleading, Defects In, in General
                170Ak1772 k. Insufficiency in General. Most Cited Cases
A claim has facial plausibility, as required to survive a motion to dismiss, when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[5] Federal Courts 170B ⇌794**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)3 Presumptions
                170Bk794 k. Pleadings. Most Cited Cases
Although a court of appeals must accept all well-pleaded factual allegations in the complaint as true on a motion to dismiss for failure to state a claim, the court need not accept as true a legal conclusion couched as a factual allegation. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[6] Trademarks 382T ⇌1096**

382T Trademarks
    382TIII Similarity Between Marks; Likelihood of Confusion
        382Tk1093 Relationship Between Marks
        382Tk1096 k. Particular Marks, Similarity or Confusion Involving. Most Cited Cases

**Trademarks 382T ⇌1106**

382T Trademarks

    382TIII Similarity Between Marks; Likelihood of Confusion
        382Tk1106 k. Relationship Between Parties or Actors Using Marks. Most Cited Cases

**Trademarks 382T ⇌1113**

382T Trademarks
    382TIII Similarity Between Marks; Likelihood of Confusion
        382Tk1113 k. Accompaniments Mitigating Confusion; Disclaimers. Most Cited Cases
Competitor's use of the name "Jim Hensley" as the name of individual who designed its trailer hitch did not create a likelihood of confusion regarding source of competitor's products, as required to establish competitor infringed "Hensley" trademark, which had been registered by a company that marketed and sold designer's previous trailer hitch under the name "Hensley Arrow" or "Arrow"; the name of competitor's product, the "Pivot Point Projection Hitch" or "3P Hitch," was not even remotely similar to the "Hensley" trademark, and competitor's advertisements described designer's association with competitor, and his design of competitor's trailer hitch, and made clear that designer was no longer associated with the trademark owner. Lanham Act, § 32(1), 15 U.S.C.A. § 1114(1).

**[7] Trademarks 382T ⇌1084**

382T Trademarks
    382TIII Similarity Between Marks; Likelihood of Confusion
        382Tk1083 Nature of Confusion
        382Tk1084 k. In General. Most Cited

**Trademarks 382T ⇌1421**

382T Trademarks
    382TVIII Violations of Rights
        382TVIII(A) In General
        382Tk1418 Practices or Conduct Prohibited in General; Elements
            382Tk1421 k. Infringement. Most

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Cited Cases
The touchstone of liability for trademark infringement is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties. Lanham Act, § 32(1), 15 U.S.C.A. § 1114(1).

**[8] Trademarks 382T ☜1081**

382T Trademarks
    382TIII Similarity Between Marks; Likelihood of Confusion
        382Tk1081 k. Factors Considered in General. Most Cited Cases
In determining whether a likelihood of confusion exists in a trademark infringement action, a court will typically weigh the following eight factors: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. Lanham Act, § 32(1), 15 U.S.C.A. § 1114(1).

**[9] Trademarks 382T ☜1422**

382T Trademarks
    382TVIII Violations of Rights
        382TVIII(A) In General
            382Tk1422 k. Nature of Defendant's Use; Use in Commerce. Most Cited Cases
Along with the eight-factor analysis, the likelihood of confusion analysis in a trademark infringement action also involves a preliminary question: whether the defendants are using the challenged mark in a way that identifies the source of their goods; if they are not, then the mark is being used in a "non-trademark" way and trademark infringement laws, along with the eight-factor analysis, do not even apply. Lanham Act, § 32(1), 15 U.S.C.A. § 1114(1).

**[10] Trademarks 382T ☜1526**

382T Trademarks
    382TVIII Violations of Rights
        382TVIII(D) Defenses, Excuses, and Justifications
            382Tk1521 Justified or Permissible Uses
                382Tk1526 k. Use of Own Name. Most Cited Cases
Competitor's use of individual's name, which identified individual as the designer of trailer hitches, described individual's relationship to competitor, and told the story behind individual's success, was descriptive, and thus competitor was entitled to the fair use defense in infringement action involving individual's trademarked last name, which had been registered by a company that marketed and sold designer's previous trailer hitch, even assuming the use of the individual's name caused some level of consumer confusion, absent bad faith on the part of competitor. Lanham Act, § 32(1), 15 U.S.C.A. § 1114(1).

**[11] Trademarks 382T ☜1523(2)**

382T Trademarks
    382TVIII Violations of Rights
        382TVIII(D) Defenses, Excuses, and Justifications
            382Tk1521 Justified or Permissible Uses
                382Tk1523 Identification or Description
                    382Tk1523(2) k. Of One's Own Product; Fair Use. Most Cited Cases
Under the "fair use doctrine," the holder of a trademark cannot prevent others from using the word that forms the trademark in its primary or descriptive sense. Lanham Act, § 33(b)(4), 15 U.S.C.A. § 1115(b)(4).

**[12] Trademarks 382T ☜1523(1)**

382T Trademarks
    382TVIII Violations of Rights
        382TVIII(D) Defenses, Excuses, and Justifications
            382Tk1521 Justified or Permissible Uses
                382Tk1523 Identification or Descrip-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 2778220 (C.A.6 (Mich.))
(Cite as: 2009 WL 2778220 (C.A.6 (Mich.)))

tion
        382Tk1523(1) k. In General. Most
Cited Cases
The only right of exclusion that trademark law cre-
ates in a descriptive word is in the secondary, new,
"trademark" meaning of the word that the trade-
mark owner has created; the original, descriptive
primary meaning is always available for use by oth-
ers to describe their goods, in the interest of free
competition.

**[13] Trademarks 382T &#8450;1523(2)**

382T Trademarks
    382TVIII Violations of Rights
      382TVIII(D) Defenses, Excuses, and Justific-
ations
        382Tk1521 Justified or Permissible Uses
          382Tk1523 Identification or Descrip-
tion
            382Tk1523(2) k. Of One's Own
Product; Fair Use. Most Cited Cases
The fair use defense to trademark infringement con-
templates and tolerates some possibility of con-
sumer confusion. Lanham Act, § 33(b)(4), 15
U.S.C.A. § 1115(b)(4).

**[14] Trademarks 382T &#8450;1523(2)**

382T Trademarks
    382TVIII Violations of Rights
      382TVIII(D) Defenses, Excuses, and Justific-
ations
        382Tk1521 Justified or Permissible Uses
          382Tk1523 Identification or Descrip-
tion
            382Tk1523(2) k. Of One's Own
Product; Fair Use. Most Cited Cases
In evaluating a defendant's fair use defense to
trademark infringement, a court must consider
whether the defendant has used the mark: (1) in its
descriptive sense; and (2) in good faith. Lanham
Act, § 33(b)(4), 15 U.S.C.A. § 1115(b)(4).

**[15] Federal Civil Procedure 170A &#8450;1752.1**

170A Federal Civil Procedure
    170AXI Dismissal
      170AXI(B) Involuntary Dismissal
        170AXI(B)2 Grounds in General
          170Ak1752 Affirmative Defenses,
Raising by Motion to Dismiss
            170Ak1752.1 k. In General. Most
Cited Cases

**Trademarks 382T &#8450;1691**

382T Trademarks
    382TIX Actions and Proceedings
      382TIX(E) Trial and Judgment
        382Tk1682 Questions of Law or Fact
          382Tk1691 k. Similarity; Likelihood
of Confusion. Most Cited Cases
Generally, dismissal for failure to state a claim
upon which relief can be granted is appropriate in
only the most extreme trademark infringement
cases, such as where goods are unrelated as a mat-
ter of law, since the likelihood of confusion is gen-
erally a question of fact; but there is no reason not
to grant a motion to dismiss where the undisputed
facts conclusively establish an affirmative defense
as a matter of law. Fed.Rules Civ.Proc.Rule
12(b)(6), 28 U.S.C.A.

**[16] Federal Civil Procedure 170A &#8450;1832**

170A Federal Civil Procedure
    170AXI Dismissal
      170AXI(B) Involuntary Dismissal
        170AXI(B)5 Proceedings
          170Ak1827 Determination
            170Ak1832 k. Matters Considered
in General. Most Cited Cases

**Federal Civil Procedure 170A &#8450;2533.1**

170A Federal Civil Procedure
    170AXVII Judgment
      170AXVII(C) Summary Judgment
        170AXVII(C)3 Proceedings
          170Ak2533 Motion
            170Ak2533.1 k. In General. Most

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Cited Cases
When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint; if the district court does consider evidence outside the complaint, it effectively converts the motion to dismiss to a motion for summary judgment and then must give the parties a reasonable opportunity to present all the material that is pertinent to the summary judgment motion. Fed.Rules Civ.Proc.Rule 12(b)(6), (d), 28 U.S.C.A.

[17] Federal Courts 170B ⟶625

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(D) Presentation and Reservation in Lower Court of Grounds of Review
            170BVIII(D)2 Objections and Exceptions
                170Bk625 k. Proceedings Preliminary to Trial or Hearing. Most Cited Cases
A party cannot raise for the first time on appeal an argument that it was surprised by the conversion of the motion to dismiss into a motion for summary judgment when the party was aware that materials outside the pleading had been submitted to the court before the court granted the motion. Fed.Rules Civ.Proc.Rule 12(b)(6), (d), 28 U.S.C.A.

Trademarks 382T ⟶1800

382T Trademarks
    382TXI Trademarks and Trade Names Adjudicated
        382Tk1800 k. Alphabetical Listing. Most Cited Cases

Trademarks 382T ⟶1800

382T Trademarks
    382TXI Trademarks and Trade Names Adjudicated
        382Tk1800 k. Alphabetical Listing. Most Cited Cases

Trademarks 382T ⟶1800

382T Trademarks
    382TXI Trademarks and Trade Names Adjudicated
        382Tk1800 k. Alphabetical Listing. Most Cited Cases
3P Hitch.

Hensley.

Pivot Point Projection Hitch.
ARGUED:Craig A. Redinger, Young Basile, Ann Arbor, Michigan, for Appellant. Josh J. Moss, Barris, Sott, Denn & Driker, PLLC, Detroit, Michigan, John F. Early, Jr., Law Office, Fenton, Michigan, for Appellees. ON BRIEF:Marshall G. MacFarlane, Young Basile, Ann Arbor, Michigan, for Appellant. Josh J. Moss, Barris, Sott, Denn & Driker, PLLC, Detroit, Michigan, John F. Early, Jr., Law Office, Fenton, Michigan, for Appellees.

Before: McKEAGUE and WHITE, Circuit Judges; MARBLEY, District Judge. FN*

OPINION

McKEAGUE, Circuit Judge.

*1 Hensley Manufacturing, Inc. ("Hensley Manufacturing") and ProPride, Inc., ("ProPride") both manufacture and sell trailer hitches for "RVers" everywhere. And, more importantly, both companies manufacture and sell trailer hitches designed by the same man: James Hensley (also known as "Jim Hensley"). Hensley Manufacturing claims that ProPride's use of Jim Hensley's name in its advertising material is likely to confuse consumers and infringes upon Hensley Manufacturing's registered trademark in the name "Hensley."

Hensley Manufacturing sued ProPride, its founder Shawn Woodruff, and Jim Hensley (collectively, "defendants") in federal district court, asserting, inter alia, a claim for trademark infringement under the Lanham Act. Defendants filed separate motions to dismiss the complaint, and Hensley Manufactur-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

ing filed its own motion for a preliminary injunction. The district court granted defendants' motions to dismiss and denied Hensley Manufacturing's motion for a preliminary injunction, holding that Pro-Pride's use of Jim Hensley's name fell under the fair use exception to trademark infringement claims.

On appeal, Hensley Manufacturing argues that the complaint adequately stated a claim for trademark infringement. It also argues that the district court prematurely dismissed the complaint on the basis of the affirmative defense of fair use and improperly considered matters outside the complaint. We affirm the district court's dismissal of the complaint.

## I. BACKGROUND

Hensley Manufacturing is a Michigan corporation with its principal place of business in Davison, Michigan. It designs, engineers, manufactures, and sells trailer-towing products. ProPride is a Michigan corporation with its principal place of business in Grand Blanc, Michigan. ProPride also designs, engineers, manufactures, and sells trailer-towing products in competition with Hensley Manufacturing.

Hensley Manufacturing alleges that on February 22, 1994, it purchased the trailer hitch business of Jim Hensley-an inventor and designer of trailer hitches-as a going concern.[FN1] The company marketed and sold Jim Hensley's trailer hitch under the name "Hensley Arrow" or "Arrow." The company also registered a trademark for the name "Hensley" as well as the "Hensley Arrow" graphic design.[FN2] Hensley Manufacturing alleges that these trademarks have become widely known and respected in the marketplace for trailers and recreational vehicles, or "RVs."

Sean Woodruff worked as a sales and marketing director at Hensley Manufacturing until July 2007, when he left and formed ProPride. At about the same time, Jim Hensley also split with Hensley Manufacturing. Hensley designed a new trailer hitch and licensed the new design to ProPride. Pro-Pride began marketing this hitch as the "ProPride Pivot Point Projection Hitch," or "3P Hitch."

On January 30, 2008, Hensley Manufacturing sued ProPride, Sean Woodruff, and Jim Hensley in the United States District Court for the Eastern District of Michigan. Hensley Manufacturing brought claims of trademark infringement and unfair competition in violation of the Lanham Act, common law trademark infringement, breach of contract against Jim Hensley, misappropriation of trade secrets against Woodruff and ProPride, and tortious interference with business relations. Specifically, Hensley Manufacturing alleged that defendants had "misappropriated the Plaintiff's registered trademark by offering for sale products and services utilizing the 'HENSLEY' trademark," su ch that there was a "strong likelihood of confusion in the marketplace as to the source of origin and sponsorship of the goods." In support of these allegations, the complaint referred to four attached examples of ProPride's promotional and advertising materials.

*2 Two of these attached examples are print advertisements by ProPride. Both advertisements state: "Only one man has ever designed a trailer hitch that effectively eliminates trailer sway before it begins. That man is Jim Hensley. NOW he has done it again and IMPROVED the PERFORMANCE of his old design." Both advertisements provide Pro-Pride's telephone number. One advertisement directs the reader to "www.TrailerSwayControlFacts.com," which is part of ProPride's website, for a free report regarding towing safety. The other advertisement specifically identifies ProPride and provides its website address: "www.ProPrideHitch.com." Both advertisements also contain a disclaimer at the bottom, which states that Jim Hensley is "no longer affiliated with Hensley Mfg., Inc."

In addition to the two print advertisements, an excerpt from ProPride's website was also attached as an exhibit to the complaint. The website includes a link to "The Jim Hensley Hitch Story," which de-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

scribes Jim Hensley's background, his design contributions to the RV industry, and his relationship to both Hensley Manufacturing and ProPride. The website refers to the 3P hitch as "Jim's new design."

The final attached example of ProPride's alleged trademark infringement is an eBay listing by Pro-Pride entitled "Used Hensley Arrow(R) hitch? Buy NEW Jim Hensley Design." The body of the advertisement, which markets the 3P Hitch, states:

Jim Hensley designed the original Hensley Arrow(R) towing system and it was the standard for over 13 years.

NOW he has done it again with an updated and improved design for today's travel trailers.

Jim is no longer affiliated with the company that was named after him. He chose ProPride, Inc. as the manufacturer of his new design.

On April 1, 2008, Jim Hensley filed a motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which was quickly followed by a motion to dismiss filed by ProPride and Sean Woodruff. Hensley Manufacturing opposed both motions. It also filed its own motion for a preliminary injunction, seeking to enjoin defendants from using Jim Hensley's name in connection with the sale or advertising of ProPride's products.

The district court granted defendants' motions to dismiss and denied Hensley Manufacturing's motion for a preliminary injunction. It held that "[t]he use of an individual's name in a descriptive sense, as opposed to the use as a trade name is acceptable under" the fair use exception to claims of trademark infringement. *Hensley Mfg., Inc. v. Propride, Inc.,* 622 F.Supp.2d 554, 559 (E.D.Mich.2008). Because Hensley Manufacturing's claims were based upon ProPride's use of Jim Hensley's name in connection with his individual reputation, and not as a trade name, the district court held that the fair use excep-

tion applied and it accordingly dismissed the trademark infringement and unfair competition claims. Reasoning that a successful breach of contract action could have only been based upon a valid claim for trademark infringement, the district court also held that Hensley Manufacturing had failed to state a claim for breach of contract against Jim Hensley.[FN3] Further, having dismissed Hensley Manufacturing's federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims. The district court then denied Hensley Manufacturing's motion for a preliminary injunction, which it found had been rendered moot in light of the ruling on the motions to dismiss. Hensley Manufacturing timely appealed the final judgment of the district court.

## II. ANALYSIS

### A. Standard of Review

*3 [1] Whether the district court properly dismissed Hensley Manufacturing's claims pursuant to Rule 12(b)(6) is a question of law, which we review *de novo. Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir.2008). We may affirm the district court's dismissal of a plaintiff's claims on any grounds, including grounds not relied upon by the district court. *Zaluski v. United Am. Healthcare Corp.,* 527 F.3d 564, 570 (6th Cir.2008).

[2][3][4][5] Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).[FN4] Rather, to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *id.,* and to "state

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

a claim to relief that is plausible on its face," *id.* at 570, 127 S.Ct. 1955; *see also Ashcroft v. Iqbal,* --- U.S. ----, ---- - ----, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. And although we must accept all well-pleaded factual allegations in the complaint as true, we need not " 'accept as true a legal conclusion couched as a factual allegation.' " *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)); *see also Iqbal,* 129 S.Ct. at 1949.

## B. Trademark Infringement Claims

On appeal, Hensley Manufacturing argues that the district court improperly granted defendants' motions to dismiss because its complaint was sufficient to state a claim for trademark infringement.[FN5] A trademark is "any word, name, symbol, or device ... used by a person ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion. *Id.* § 1114(1). Only the third requirement-likelihood of confusion-is at issue in this case.

### 1. Likelihood of Confusion

[6][7][8][9] "The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir.1997). In determining whether a likelihood of confusion exists, a court will typically weigh the following eight factors: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.; see also Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 694 (6th Cir.2003). But the likelihood of confusion analysis also involves a preliminary question: whether the defendants "are using the challenged mark in a way that identifies the source of their goods." *Interactive Prods.,* 326 F.3d at 695. If they are not, then the mark is being used in a " 'non-trademark' way" and trademark infringement laws, along with the eight-factor analysis, do not even apply. *Id.* In *Interactive Products,* for example, this court concluded that the appearance of the plaintiff's trademark in the post-domain path of the defendant's website would not cause consumer confusion regarding the source of the website or the products on it. *Id.* at 698. Because there was no likelihood of confusion as to the source of the products, it was "unnecessary for the district court to examine the eight factors traditionally used to determine likelihood of confusion between two source-signifying marks." *Id.*

*4 The Second Circuit has applied essentially the same logic in a case, like this one, involving an individual's use of his personal name. In *Madrigal Audio Laboratories v. Cello, Ltd.,* 799 F.2d 814, 816 (2d Cir.1986), the defendant, Mark Levinson, granted Mark Levinson Audio Systems, Inc., ("MLAS") the right to use "Mark Levinson" as a trade name. Levinson eventually left MLAS and founded another company, Cello, Ltd. ("Cello"). *Id.* at 817. Cello issued a promotional brochure entitled "Cello by Mark Levinson," which contained a one-page "Note from Mark Levinson" and several photographs of Levinson. *Id.* Madrigal Audio Laboratories, Inc. ("Madrigal") acquired the trademark and trade name rights of MLAS in bankruptcy and sub-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

sequently sued Levinson and Cello for trademark and trade name infringement. *Id.* The Second Circuit held that "[w]hen an individual sells no more than the right to use his name as a trade name or trademark," he is not precluded "from taking advantage of his individual reputation (as opposed to the reputation of the company which bore his personal name as a trade name) by establishing a company which competes against the purchaser of the trade name" or "from advertising, in a not overly intrusive manner, that he is affiliated with a new company." *Id.* at 823. He is only prohibited from "using his name in such a way as to mislead the public into believing that those products are produced by the company which purchased the trade name." *Id.* Because the use of Mark Levinson's name in Cello's materials was not likely to confuse consumers regarding the origin of Cello's products, the Second Circuit reversed the district court's order barring Levinson and Cello from advertising Levinson's relationship to Cello. *Id.* at 824.

Here, the complaint does not allege facts sufficient to show that ProPride's use of the "Hensley" name creates a likelihood of confusion as to the source of its products. Hensley Manufacturing does not claim that ProPride has marked its trailer hitch products with the trademarks "Hensley," "Hensley Arrow," or even "Jim Hensley." The name of ProPride's product, the "Pivot Point Projection Hitch" or "3P Hitch," is not even remotely similar to the "Hensley" trademark. Instead, the complaint challenges ProPride's use of Jim Hensley's name in connection with its advertising of the 3P Hitch. Although Hensley Manufacturing alleges that this creates "a strong likelihood of confusion in the marketplace as to the source of origin and sponsorship of the goods of the Plaintiff and the Defendant," such a conclusory and "formulaic recitation" of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss. *See Iqbal*, 129 S.Ct. at 1954 ("Rule 8 does not empower respondent to plead the bare elements of his cause of action ... and expect his complaint to survive a motion to dismiss."). The exhibits attached

to the complaint also indicate that Jim Hensley's name does not signify the source of ProPride's products. The two attached print advertisements identify Jim Hensley as the designer of the new 3P Hitch, as well as an earlier hitch that is not named. Each print advertisement states (albeit in smaller, but still noticeable, font) that Jim Hensley is "no longer affiliated with Hensley Mfg., Inc." Moreover, one of the print advertisements clearly identifies ProPride as the source of the advertised product by providing the domain name for ProPride's website: "www.ProPrideHitch.com." A nother exhibit, the printout of ProPride's website, also clearly identifies ProPride as the source of the 3P Hitch. The website refers readers to "The Jim Hensley Hitch Story" for "the facts about a man who has made an enormous contribution to RVers and the RV industry," but ProPride's name appears on the page over ten times; there is absolutely no confusion as to the source of the product being advertised. Finally, ProPride's eBay advertisement encourages buyers to "Buy NEW Jim Hensley Design," but it also states that "Jim is no longer affiliated with the company that was named after him. He chose ProPride, Inc. as the manufacturer of his new design." This advertisement clearly identifies ProPride as the seller of the 3P hitch.

**\*5** Ultimately, the exhibits attached to the complaint describe Jim Hensley's association with ProPride, his design of the ProPride 3P Hitch, and his former association with Hensley Manufacturing. They do not identify Hensley Manufacturing, or even "Hensley," as the source of ProPride's products or suggest any current association between Hensley Manufacturing and Jim Hensley or ProPride. In fact, the advertisements make clear that Jim Hensley is no longer associated with Hensley Manufacturing. Moreover, they always refer to "Jim Hensley" and never simply use the word "Hensley" in connection with the 3P Hitch.[FN6] For all of these reasons, we conclude that they do not create a likelihood of consumer confusion regarding the source of ProPride's products.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

*2. Fair Use Defense*

[10][11][12][13] Even if Hensley Manufacturing's complaint somehow cleared the hurdle of showing a likelihood of confusion, however, the affirmative defense of fair use applies to bar the trademark infringement claims. A defendant may raise the affirmative defense of fair use by establishing that:

the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.

15 U.S.C. § 1115(b)(4); *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 118-22, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004); *Audi AG v. D'Amato,* 469 F.3d 534, 547 (6th Cir.2006). Under the fair use doctrine, "the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.,* 270 F.3d 298, 319 (6th Cir.2001). Rather,

[t]he only right of exclusion that trademark law creates in a descriptive word is in the secondary, new, 'trademark' meaning of the word that plaintiff has created. The original, descriptive primary meaning is always available for use by others to describe their goods, in the interest of free competition.

*Id.* (quoting J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 11:45 (4th ed.1996)); *see also Car-Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 270 (2d Cir.1995) ("[F]air use permits others to use a protected mark to describe aspects of their own goods, provided the use is in good faith and not as a mark."). The fair use defense contemplates and tolerates "some possibility of consumer confusion." *KP Permanent,* 543 U.S. at 121, 125 S.Ct. 542.

[14] "In evaluating a defendant's fair use defense, a court must consider whether [the] defendant has used the mark: (1) in its descriptive sense; and (2) in good faith." *ETW Corp. v. Jireh Pub., Inc.,* 332 F.3d 915, 920 (6th Cir.2003). In *ETW Corp.,* this court held that an artist's use of Tiger Woods's name on the back of the envelope containing the artist's print and in the narrative description of the print was "purely descriptive," and that there was "nothing to indicate that [it was] used other than in good faith." *Id.* at 920-21. Woods's name, the court noted, was used only to describe the content of the print, and all of the materials accompanying the print clearly identified the artist himself as the source of the print. *Id.* Accordingly, the plaintiff's claim for violation of its trademark "Tiger Woods" was "barred by the fair use defense as a matter of law." *Id.*

*6 At oral argument, counsel for Hensley Manufacturing conceded that the law permitted ProPride to use Jim Hensley's name in a descriptive sense to advertise his association with the company. That is exactly what ProPride did. The company's advertisements do not use the name "Hensley" in the trademark sense; they use Jim Hensley's name only to identify him as a designer of trailer hitches (including the ProPride 3P Hitch), describe his relationship to ProPride, and tell the story behind his success. To the extent they cause some level of consumer confusion, Hensley Manufacturing assumed that risk by trademarking Jim Hensley's own personal last name. *See KP Permanent,* 543 U.S. at 121, 125 S.Ct. 542. Because the complaint and attached exhibits show that ProPride's uses of Jim Hensley's name are descriptive, and because Hensley Manufacturing did not allege facts from which any inference of bad faith can be drawn, we hold that the fair use defense applies in this case as a matter of law.

**C. Procedural Arguments**

[15] In its final argument in support of reversal, Hensley Manufacturing challenges the district

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

court's dismissal of its trademark infringement claims in the procedural posture of a motion to dismiss. First, it argues that the district court prematurely granted the motions to dismiss based upon the affirmative defense of fair use. Generally, "dismissal for failure to state a claim upon which relief can be granted is appropriate in only the most extreme trademark infringement cases, such as where goods are unrelated as a matter of law, since the likelihood of confusion is generally a question of fact." 32 *Federal Procedure, Lawyer's Edition* § 74:507 (2008). But there is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law. *See In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 16 (1st Cir.2003) (holding that a suit can be dismissed on the basis of an affirmative defense if the facts establishing the defense are "definitively ascertainable from the allegations of the complaint" and they "conclusively establish the affirmative defense"); *Tregenza v. Great Am. Commc'ns Co.,* 12 F.3d 717, 718 (7th Cir.1993) (noting that if a plaintiff "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court"). Here, the facts Hensley Manufacturing alleged in its complaint, as well as the attached exhibits, demonstrated that there was no likelihood of confusion and that the fair use defense conclusively applied as a matter of law. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 11 F.3d 1460, 1467 (9th Cir.1993) (affirming district court's grant of motion to dismiss trademark infringement claim because defendant's use was fair use as a matter of law). Hensley Manufacturing contends that "facts *may exist* that establish a level of consumer confusion" and that "facts *may exist* that establish that 'Hensley' is not being used fairly and in good faith." Appellant's Br. at 13 (emphasis added). But mere speculation is insufficient; it was Hensley Manufacturing's burden to allege those facts, if they indeed exist, in the first instance. Simply put, Hensley Manufacturing failed to state a claim for relief that is "plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955; *see also Iqbal,* 129 S.Ct. at 1949 (noting that the

plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

*7 [16] Second, Hensley Manufacturing argues that the district court improperly considered facts that were outside the complaint without giving it adequate notice and a reasonable opportunity to respond. When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint. *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir.2008). If the district court does consider evidence outside the complaint, "it effectively converts the motion to dismiss to a motion for summary judgment." *Id.; see also Kostrzewa v. City of Troy,* 247 F.3d 633, 643 (6th Cir.2001). It then must give the parties "a reasonable opportunity to present all the material that is pertinent to the [summary judgment] motion." FED.R.CIV.P. 12(d).

[17] Hensley Manufacturing offers only one example in support of its argument that the district court considered matters outside the complaint: the district court's discussion of ProPride's use of a domain name, "jimhensleyhitch.com," which redirects users to ProPride's website.[FN7] Indeed, we are unable to find any indication of this domain name in the complaint or the exhibits attached to the complaint. Evidence of ProPride's ownership of the domain name appeared first in Hensley Manufacturing's motion for a preliminary injunction. Even assuming that the district court's consideration of this domain name was sufficient to convert the motions to dismiss into motions for summary judgment, however, Hensley Manufacturing cannot demonstrate that it was prejudiced by the district court's failure to notify it of the conversion. "[A] party cannot raise for the first time on appeal an argument that [it] was surprised by the conversion of the motion to dismiss into a motion for summary judgment when the party was aware that materials outside the pleading had been submitted to the court before the court granted the motion." *Song v. City of Elyria,* 985 F.2d 840, 842 (6th Cir.1993). That is especially true in this case, where Hensley

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Manufacturing itself submitted evidence of the "jimhensleyhitch.com" domain name to the court. It cannot now complain that the district court considered what it had asked the court to consider. And even if the summary judgment standard of review applies to the district court's dismissal of the complaint, the trademark infringement claims still fail as a matter of law.[FN8]

### D. Remaining Claims

After dismissing the trademark infringement claims, the district court did not err in dismissing Hensley Manufacturing's remaining claims. First, the district court concluded that a successful breach of contract claim would require a successful trademark infringement claim. Hensley Manufacturing does not challenge that conclusion on appeal. The breach of contract claim, then, fell along with the trademark infringement claims. And, having dismissed all of the federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims. *See Grace v. USCAR,* 521 F.3d 655, 679 (6th Cir.2008). It also did not err in denying Hensley Manufacturing's motion for a preliminary injunction, which was rendered moot in light of the court's dismissal of the complaint.

### III. CONCLUSION

**\*8** For the foregoing reasons, we **AFFIRM** the decision of the district court.

FN* The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

FN1. As the district court noted, there is no proof that Hensley Manufacturing purchased Jim Hensley's business as a going concern. The record only reflects that Jim Hensley and Hensley Manufacturing

entered into a Licensing Agreement. In this agreement, Jim Hensley agreed to grant Hensley Manufacturing the exclusive license to "practice, make, have made, market, advertise, use and sell" products made in accordance with two patents owned by him. In exchange, he received a one-time royalty payment, shares in Hensley Manufacturing, and a continuing royalty. Because this is an appeal from the district court's grant of a motion to dismiss, however, we accept all of Hensley Manufacturing's well-pleaded factual allegations as true.

FN2. The "Hensley Arrow" design trademark is not at issue in this case.

FN3. The complaint alleged that Jim Hensley agreed by his conduct over a period of ten years "that the Hensley trademarks would be the sole and exclusive property of Hensley Manufacturing" and that he would not "undertake any action to misappropriate or dilute the Hensley trademark."

FN4. The Supreme Court has recently clarified that its decision in *Twombly* "expounded the pleading standard for 'all civil actions,' " despite the fact that *Twombly* itself arose in the context of an antitrust suit. *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868 (2009). The Court's decision in *Iqbal* made clear that the *Twombly* standard is not limited to "sprawling, costly, and hugely time-consuming" litigation, *Twombly,* 550 U.S. at 560 n. 6, 127 S.Ct. 1955, dispelling such speculation by courts both within and outside this circuit. *See, e.g., U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 502 n. 6 (6th Cir.2008); *Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 296 n. 1 (6th Cir.2008); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 336 n. 4

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

(6th Cir.2007); *Iqbal v. Hasty,* 490 F.3d 143, 155-58 (2d Cir.2007), *rev'd, Iqbal,* 129 S.Ct. at 1954.

FN5. Although Hensley Manufacturing only asserts a claim of error with respect to its federal trademark infringement claim, we assume that this argument also refers to Hensley Manufacturing's claim of unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and its claim for common law trademark infringement, which both employ the same "likelihood of confusion" test as a claim for trademark

FN6. Hensley Manufacturing points out that "The Jim Hensley Hitch Story" on ProPride's website includes a reference to the "Hensley Hitch" without using Jim Hensley's first name. Specifically, the website states: "This was the beginning of the Hensley Hitch concept." Aside from the fact that a printout of that particular portion of the website was not attached as an exhibit to the complaint, "The Jim Hensley Hitch Story" gives a detailed explanation of Jim Hensley's relationship to both Hensley Manufacturing and ProPride and, viewed as a whole, does not create any likelihood of confusion regarding the source of the products on ProPride's website.

FN7. The exhibits attached to the complaint are considered part of the complaint for purposes of a motion to dismiss. *See* FED.R.CIV.P. 10(c).

FN8. As the district court noted, the "jimhensleyhitch.com" domain name consists of Jim Hensley's entire name. This descriptive use distinguishes the domain name from Hensley Manufacturing and does not create a likelihood of confusion as to the source of the website or its products.

C.A.6 (Mich.),2009.
Hensley Mfg. v. ProPride, Inc.
--- F.3d ----, 2009 WL 2778220 (C.A.6 (Mich.))

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 1974747 (M.D.Tenn.)
**(Cite as: 2009 WL 1974747 (M.D.Tenn.))**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Tennessee,
Nashville Division.
Anne M. RISSER, Plaintiff,
v.
The METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY, TEN-
NESSEE, Defendant.
No. 3:09-0386.

July 7, 2009.

Alan Cook Housholder, Housholder & Housholder,
Nashville, TN, for Plaintiff.

Allison L. Bussell, Kevin C. Klein, Metropolitan
Legal Department, Nashville, TN, for Defendant.

### MEMORANDUM

ALETA A. TRAUGER, District Judge.

*1 Pending before the court is a Motion to Dismiss
(Docket No. 8) filed by the defendant Metropolitan
Government of Nashville and Davidson County,
Tennessee ("Metro"). For the reasons discussed
herein, the defendant's motion will be granted, al-
though the plaintiff's state law claim will be dis-
missed without prejudice.

### FACTUAL AND PROCEDURAL BACK-
GROUND

Plaintiff Anne M. Risser is a disabled former school
teacher and a resident of Williamson County, Ten-
nessee.[FN1] On March 13, 2006, an entity known as
Nobel Properties ("Nobel") sued the plaintiff in the
General Sessions Court of Davidson County, Ten-
nessee to recover real property located at 1543 Bat-
tlefield Drive in Nashville, Tennessee, which was

the plaintiff's residence at the time. Three days
later, Nobel and the plaintiff came to an agreement
whereby the plaintiff would vacate the premises by
April 15, 2006, and, on March 21, 2006, a judgment
was entered in the General Sessions Court reflect-
ing that agreement. (Docket No. 1 Ex. B.)

> FN1. Unless otherwise noted, the facts are
> drawn from the Complaint (Docket No. 1).

By April 21, 2006, the plaintiff had not vacated the
Battlefield Drive property, and, therefore, Nobel's
attorney, Michelle Poss, filed a Writ of Restitution
in the General Sessions Court to start eviction pro-
ceedings at the property. By April 25, 2006, the
plaintiff's attorney, Alan Housholder, had received
a copy of the Writ. He informed Ms. Poss that the
Writ was defective, and, either way, the plaintiff
was in the process of moving and would be off of
the premises shortly. With this conversation, Mr.
Housholder believed that he had an agreement with
Ms. Poss that no eviction would take place before
May 1, by which time the plaintiff would have
completed her move. Indeed, on April 27, 2006, the
plaintiff moved her "big items of furniture" from
the Battlefield Drive property to her new apartment,
and, on that day, the Battlefield Drive property was
sold.

The next day, the plaintiff went back to the Battle-
field Drive property to remove the remainder of her
property, but she "found that the personalty inside
the house was being dumped into the front yard by
Deputy Sheriff Robert W. Lillard, Jr., a deputy
sheriff appointed by the sheriff of Davidson
County, Tennessee." (Docket No. 1 at 2.) The
plaintiff claims that she became "hysterical ... after
seeing her precious personalty being dumped ran-
domly into the front yard." (*Id.*) After seeing this,
the plaintiff called Mr. Housholder, who, in turn,
called Mr. Lillard and told him that the Writ was
defective and that he should cease the eviction. Mr.
Lillard apparently ignored Mr. Housholder's argu-
ments, and the eviction continued. Immediately

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Slip Copy, 2009 WL 1974747 (M.D.Tenn.)
(Cite as: 2009 WL 1974747 (M.D.Tenn.))

thereafter, Mr. Housholder went to the General Sessions Court and received an Order from Judge Holt that the eviction cease on the grounds that there was never an order that actually granted possession of the Battlefield Drive property to Nobel. Judge Holt telephoned Mr. Lillard and ordered him to stop the eviction. While the eviction ceased at this point, the plaintiff claims that Mr. Lillard left the plaintiff's items "stashed and trashed in the front yard." (*Id.* at 3.) By May 1, 2006, the plaintiff "had completely removed all of her remaining personalty out of the Battlefield Drive premises except for a small amount of trash." (*Id.*)

**\*2** The plaintiff alleges that her rights were violated by the eviction. She claims that Mr. Lillard had her "delicate, precious, fragile, and valuable antiques ... musical instruments from around the world ... puzzles, dolls, and literature," among many other things, "thrown indiscriminately into her linens and trash bags and/or otherwise dumped randomly into the front yard onto wet grass" and this "dumping" caused many of these items to be broken, damaged, or ruined. (*Id.*) The plaintiff asserts liability against Metro here because, she claims, Lillard "utiliz[ed] the routine procedures of the Davidson County Sheriff's Office Civil Warrant Division." (*Id.*) The plaintiff claims that, in addition to the damage to her property, she had severe mental, emotional, and physical suffering as a result of the manner in which the eviction was carried out.

The plaintiff filed an earlier suit regarding this eviction. In April 2007, the plaintiff filed Davidson County Circuit Court Case No. 07-CV-1161 (*Risser v. Wallace, et al.*) naming Nobel, Poss, Lillard and two other individuals associated with Nobel as defendants. (Docket No. 8 Ex. D.) In April 2008, Lillard's Motion for Summary Judgment in that case was granted, and all claims against him were dismissed. (Docket No. 8 Ex. A.) Shortly thereafter, the plaintiff moved to amend her state court complaint to add Metro as a defendant and to assert claims under T.C.A. § 8-8-301 and the Governmental Tort Liability Act (GTLA) against Metro.

(Docket No. 8 Ex. E.) With the Circuit Court's approval, Metro made a limited appearance and objected to the motion to amend. (*Id.*) On June 6, 2008, the Circuit Court denied the motion to amend because (1) as to the T.C.A. § 8-8-301 claim, the motion to amend was untimely and (2) as to the GTLA claim, the motion to amend was futile. (*Id.*)

On April 27, 2009, the plaintiff filed her Complaint in this court, alleging that Metro is liable under T.C.A. § 8-8-301, *et seq.* and 42 U.S.C. § 1983. Metro has moved to dismiss the Complaint on various grounds.

### ANALYSIS

The plaintiff claims that defendant Metro violated her rights under 42 U.S.C. § 1983 and that Metro is also liable under T.C.A. § 8-8-301 *et seq.,* which provides, among other things, that an individual may bring suit against the county in which a sheriff's deputy serves for certain types of misconduct by the deputy. *See* T.C.A. § 8-8-302. As to the Section 1983 claim, the plaintiff alleges that the eviction violated her rights to due process under the Fourteenth Amendment to the U.S. Constitution. Defendant Metro has moved to dismiss both claims, arguing that they are barred by *res judicata* principles, that the Section 1983 claim is time barred, and that the Section 1983 claim fails to state a claim for relief, because the plaintiff "was provided an adequate remedy at state law." (Docket No. 17 at 4.)

### I. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6) [FN2], the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007); *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir.2002). The Federal Rules of Civil Procedure require only that a plaintiff provide

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Slip Copy, 2009 WL 1974747 (M.D.Tenn.)
(Cite as: 2009 WL 1974747 (M.D.Tenn.))

" 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer,* 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz,* 534 U.S. at 514.

> FN2. Metro does not indicate the provision of Rule 12 under which it seeks dismissal, but *res judicata* and statute of limitations arguments have been found to be appropriate for consideration under Rule 12(b)(6). *See ABS Industries v. Fifth Third Bank,* 2009 WL 1811915, *3 (6th Cir. June 25, 2009) (*res judicata* ); *Jones v. Whittaker,* 316 Fed. Appx. 463, 463 (6th Cir.2009) (statute of limitations).

*3 In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (citing *Twombly,* 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2)

does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." *Twombly,* 127 S.Ct. at 1965 n. 3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir.2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n. 1; *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b) (6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely").

In *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868, 2009 WL 1361536 (May 18, 2009), the Court further expounded on the "two working principles" that underlie the *Twombly* decision. *Id.* at 1949. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim under the federal rules. *Id.* Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Slip Copy, 2009 WL 1974747 (M.D.Tenn.)
(Cite as: 2009 WL 1974747 (M.D.Tenn.))

defendant is liable for the misconduct alleged." *Id.* at 1949.

Further, the Court explained that determining "facial plausibility" is a "context-specific task," in which the reviewing court must "draw on its judicial experience and common sense." *Id.* at 1950. Where, using this background, the court finds that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* (quoting Fed. Rule Civ. Proc. 8(a)(2)). The Court noted that, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## II. Section 1983 Claim

**\*4** As noted above, the plaintiff asserts a claim against Metro under Section 1983 and T.C.A § 8-8-301, *et seq.* The defendant argues that the Section 1983 claim is time barred. The defendant points out that the statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 is determined by Tennessee state law, and that the Tennessee Code states that "civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes" "shall be commenced within one year after the cause of action accrued." *Roberson v. Tennessee,* 399 F.3d 792, 794 (6th Cir.2005); T.C.A. § 28-3-104(a)(3). Here, the Complaint alleges that the plaintiff's property was "stashed and trashed" during an improper eviction on April 28, 2006, but her Complaint was not filed until April 27, 2009, almost exactly three years after the cause of action accrued.

In response, the plaintiff contends that her Section 1983 claim is not time barred because "Tennessee has separate limitations of action statutes for personal tort actions and property tort actions. T.C.A. § 28-3-105 provides a three-year statute of limitations for property tort actions. T.C.A. § 28-3-104 allows a one-year statute of limitation for personal tort actions." (Docket No. 13 at 4.) [FN3] The plaintiff argues that her Complaint asserts an injury to property, and, therefore, her claim is governed by a three-year statute of limitations, and the Section 1983 claim is, therefore, timely. The plaintiff goes on to cite a series of non-Section 1983 cases in which the Tennessee courts distinguish the "one year statute of limitation for tortious personal injury" found in Section 104 from "the three year statute of limitation for tortious property damage" found in Section 105 and then look to the "gravamen" of the complaint to determine which statute of limitations should apply. (Docket No. 13 at 4-8 citing *e.g. Vance v. Schulder,* 547 S.W.2d 927 (Tenn.1977); *Gunter v. Laboratory Corp. of America,* 121 S.W.3d 636 (Tenn.2003); *Whaley v. Perkins,* 197 S.W.3d 665 (Tenn.2006).

> FN3. The titles of the statutes do indicate that Section 104 is a limitations of action provision related to "torts; persons" and Section 105 is a limitations of action provision related to "torts; property." T.C.A. § 28-3-104; T.C.A. § 28-3-105.

The plaintiff's precise argument was rejected by the Sixth Circuit last year. *See Porter v. Brown,* 289 Fed. Appx. 114 (6th Cir.2008). In that case, the plaintiff argued that the district court erred in determining that a one-year statute of limitations applied to his Section 1983 claim because the plaintiff claimed that he primarily suffered injuries to his property, and, therefore, a three-year limitations period should apply. *Id.* at 116. The court noted that "our precedent has long made clear that the limitations period for Section 1983 actions arising in Tennessee is the one-year limitations provision found in T.C.A. § 28-3-104(a)." *Id.* (citing *Hughes*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

*v. Vanderbilt Univ.,* 215 F.3d 543, 547 (6th Cir.2000); *Berndt v. Tennessee,* 796 F.2d 879, 883 (6th Cir.1986)).

Further, the court concluded that the U.S. Supreme Court had already "stuck a dagger" in the plaintiff's theory that the limitations period for his Section 1983 claim could be variable based on the category of underlying harm that he alleged. *Id.* Indeed, in *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 124, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005) the Supreme Court noted that it had "expressly reject[ed] the proposition that the limitations period for a Section 1983 claim depends on the nature of the underlying right being asserted." Rather, in each state, "the one most appropriate statute of limitations for *all* Section 1983 claims" is to be selected. *Id.* (emphasis in original). Here, as repeatedly and concretely stated by the Sixth Circuit, "the one" statute of limitations for "all Section 1983 claims" arising in Tennessee is the one-year statute of limitations discussed above.

**\*5** In light of this clear precedent, the plaintiff's Section 1983 claim is subject to a one-year statute of limitations. As the Complaint indicates that the plaintiff did not file her Section 1983 claim until three years after the claim accrued, the plaintiff's Section 1983 claim is time-barred and must be dismissed with prejudice.[FN4]

> FN4. In support of her argument for a distinction, the plaintiff also cites *Hill v. State of Tennessee,* 868 F.Supp. 221 (M.D.Tenn.1994), a Section 1983 case. The plaintiff argues that *Hill* "cited both T.C.A. § 28-3-104 and T.C.A. § 28-3-105 and decided 'plaintiff's [Section 1983] claim is most analogous to a personal injury claim, rather than one for property damage ...' " (Docket No. 13 at 5 quoting *Hill,* 868 F.Supp. at 224.) In *Hill,* Section 105 is largely cited because the plaintiff in that case advanced the same argument that the plaintiff is advancing here, and, as here, the court rejected that argument.

While *Hill* is perhaps not as definitive as the Sixth Circuit that only one statute of limitations applies to Section 1983 actions brought in Tennessee, that is of no moment here, as the Sixth Circuit opinion on the matter is binding precedent, postdating *Hill* by more than a decade.

### III. T.C.A. § 8-8-301 Claim

Because the plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331 (Docket No. 1) and because the court will dismiss the only federal claim in this case, the next issue is whether the court should decline to exercise supplemental jurisdiction over the plaintiff's T.C.A. § 8-8-301 claim. A federal district court "may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

District courts are generally considered to have broad discretion over whether to dismiss a state-law claim in this instance. *See Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 233 (6th Cir.1997); *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254 (6th Cir.1996). That said, given the "constitutional and prudential limits on the use of federal judicial power," the "balance of considerations" (considerations including judicial economy, convenience, fairness, and comity) for the district court will usually point "to dismissing the state law claims" in a Section 1331 case in which no federal cause of action remains. *Musson,* 89 F.3d at 1254-55; *see also Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412 (6th Cir.1991) (finding that "overwhelming interests in judicial economy" should be in play before the district court exercises its discretion to decide a pendant state court claim after the federal claim has been dismissed pre-trial.)

Moreover, when the litigation is in its earliest stages and the federal claim is dismissed, the balancing usually points especially strongly in favor of declining jurisdiction. *See Carnegie-Mellon Univ.*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Slip Copy, 2009 WL 1974747 (M.D.Tenn.)
(Cite as: 2009 WL 1974747 (M.D.Tenn.))

*v. Cohill,* 484 U.S. 343, 350-51, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (stating that supplemental jurisdiction remains a "doctrine of flexibility" but also stating that, "when the balance of these factors indicates that a case properly belongs in state court, as when the federal law claims have dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.")

Here, the lone federal claim in this federal question case has "dropped out" of the lawsuit at the motion to dismiss stage. The only remaining claim arises under Tennessee law and is asserted by a Tennessee plaintiff against a Tennessee defendant. Under the standard discussed above, there is a very strong argument that this state law claim should be dismissed without prejudice so that the plaintiff may re-file in Tennessee state court.

*6 Neither party addresses the supplemental jurisdiction issue in briefing. The defendant asks the court to dismiss the state law claim, with prejudice, arguing that the claim is barred under *res judicata* principles. (*See e.g.* Docket No. 8 at 4-6; Docket No. 17 at 1-3.)

"To obtain dismissal [of a claim] based on *res judicata,* the party asserting the defense must show that (1) a court of competent jurisdiction rendered the underlying judgment; (2) the same parties or their privies were involved in both proceedings; (3) both proceedings involved the same cause of action; and (4) the underlying judgment was final and on the merits." *Roberts v. Vaughn,* 2009 WL 1608981,*3 (Tenn.Ct.App. June 10, 2009). To satisfy the "same cause of action" prong, the party asserting *res judicata* need only show that the claims in both cases arose out of the "same transaction or a series of connected transactions." *Id.* at *5.

Here, Metro contends that (1) the judgment from the Circuit Court in favor of Deputy Lillard operates as the necessary "underlying" and "final" judgment; (2) the "same parties" prong is satisfied be-

cause Deputy Lillard was the "privy" of Metro, and (3) the "same cause of action" prong is satisfied because both disputes stem from the allegedly wrongful eviction. (Docket No. 8 at 5.)

As noted above, there is a strong basis for dismissing this state law claim without prejudice so that the plaintiff may re-file in state court. Perhaps, if Metro's *res judicata* argument appeared to be a crystal clear "winner" for Metro, it would better serve the interests of judicial economy to consider the argument and potentially dismiss the state law claim with prejudice, rather than dismiss the claim without prejudice and have the plaintiff re-file the state law claim in state court. Metro's *res judicata* argument is not such a crystal clear winner, however. For instance, the parties' briefing demonstrates legitimate debate about whether Lillard and Metro were, in fact, privies as that term is used in the *res judicata* context.[FN5] *See Cihlar v. Crawford,* 39 S.W.3d 172, 180 (Tenn.Ct.App.2000) ("privity connotes an identity of interest, that is, a mutual or successive interest to the same rights .... the existence of privity or identity of interest for the purpose of applying res judicata and collateral estoppel depends on the facts of each case.")

> FN5. In support of its privity argument, Metro cites two cases, both about fifty years old, that considered the concept of privity in the context of "derivative" liability, finding that parties could be in privity for *res judicata* purposes where the liability of one was purely derivative of the other. (Docket No. 8 at 5 citing *Caldwell v. Kelly,* 202 Tenn. 104, 302 S.W.2d 815, 816-17 (Tenn.1957); *Davis v. McKinnon & Mooney,* 266 F.2d 870, 873 (6th Cir.1959)). In response, the plaintiff argues that she is not asserting liability against Metro on a "derivative" basis, noting that Lillard was accused of intentional infliction of emotional distress in the state court proceeding and "the issues in the current case have nothing to do with intentional in-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

fliction of emotional distress." (Docket No. 13 at 3.)

The merits of the arguments here are for the state court. As *Cohill* indicated, there is a very strong presumption that the court should dismiss the state court claim now that the federal claim in this federal question lawsuit has disappeared. Further, the briefing of the *res judicata* issue as to the remaining state law claim indicates that the outcome of that issue is not so obvious that "overwhelming interests" of judicial economy dictate that the court should take up the *res judicata* issue. Therefore, the court will dismiss the state law claim, without prejudice, so that the plaintiff may re-file in state court.

## *CONCLUSION*

*7 For the reasons discussed above, Metro's Motion to Dismiss will be granted. That is, the plaintiff's Section 1983 claim will be dismissed with prejudice as time barred, and, as the lone federal claim in this federal question case will be dismissed, the court will decline to exercise jurisdiction over the remaining state law claim, and that claim will be dismissed without prejudice so the plaintiff may re-file in state court.

An appropriate order will enter.

M.D.Tenn.,2009.
Risser v. Metropolitan Government of Nashville and Davidson County, Tenn.
Slip Copy, 2009 WL 1974747 (M.D.Tenn.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.