IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HOUSE OF BRYANT PUBLICATIONS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>A&E TELEVISION NETWORKS, )<br>)<br>Defendant. )<br>) | Case No. 3:09-0502<br>Judge Trauger |

## MEMORANDUM

Pending before the court is the defendant's Request for Judicial Notice in Support of its Motion to Dismiss (Docket No. 5) and the defendant's Motion to Dismiss for Failure to State a Claim (Docket No. 6). For the reasons discussed herein, the defendant's Request for Judicial Notice will be granted to the extent that the court will consider the "Phantom Hitman" television episode and the musical composition "Rocky Top" that are at the core of this dispute. Considering these materials, the defendant's Motion to Dismiss will be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This is a copyright dispute between the plaintiff, House of Bryant Publications, LLC ("HOB"), and the defendant, A&E Television Networks ("A&E").[1] According to the Complaint, Felice and Boudleaux Bryant, a married couple, wrote the musical composition "Rocky Top" in 1967. "Rocky Top" is a very well-known piece of music (particularly in the South), and it has

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1).

1

been recorded dozens of times by popular recording artists. "Rocky Top" is also the official state song of Tennessee.

The Complaint alleges that, at present, Dane B. Bryant, Del R. Bryant and the Estate of Felice Bryant (the "Bryants") own 100 percent of the right, title and interest in and to the musical composition "Rocky Top," including the copyright, which the Bryants claim to have properly registered. The Bryants and HOB have an exclusive administration arrangement that allows HOB to administer, license and sue on copyrights held by the Bryants in the HOB name. Indeed, HOB actively licenses "Rocky Top" for live performance and synchronization in audio-visual works, including to the University of Tennessee at Knoxville ("UT").

UT has obtained a "blanket performance rights license" for "Rocky Top" that allows organizations connected with UT, such as the band, to publicly perform "Rocky Top." However, the license does not permit UT to synchronize "Rocky Top" with video unless UT obtains an additional license from HOB, and HOB also does not permit UT to allow third parties to synchronize "Rocky Top" with video.

As indicated above, the defendant is a cable television network that is involved in the production of television programs that air on that network. One of those programs is *City Confidential*, a dramatic, "true crime" series. In each episode of *City Confidential*, a notorious criminal incident is explored, with the city in which the event occurred providing a contextual background for the incident. In 2003 or 2004, A&E, working with the Jupiter Entertainment production company, created an episode of *City Confidential* titled "Phantom Hitman" (the "Episode"). The Episode explored a 1994 attempted contract killing in Knoxville and was first

broadcast on A&E in December 2004. According to the plaintiff, the Episode continues to be regularly aired.

In the first few minutes of the Episode, among other things, the narrator and various interviewees discuss Knoxville's culture, including the cultural impact of UT. (Docket No. 10 Ex. A.) About three minutes and thirty-five seconds into the Episode, after an interviewee notes that UT is a "major source of creative activity," the narrator, with the video of the Episode shifting from campus scenes to game-day scenes from the UT football stadium, remarks "and, as the stark-raving orange clad masses will attest, they play a little football too." (*Id.*) For the next six to seven seconds, the UT band (with no vocal accompaniment) can clearly be heard to be playing "Rocky Top" as scenes from the game and the crowd are displayed. (*Id.*). In the five to six seconds after that, an interviewee discusses that UT football is "nuts," while images of a football game continue to be displayed and "Rocky Top" can still be heard in the background, although less clearly than in the 6-7 preceding seconds. (*Id.*) "Rocky Top" is not played at any other time in the Episode, which runs about 47 minutes and, for the most part, focuses on an attempted contract killing that, as far as the court can tell, had nothing to do with UT, "Rocky Top," or football.

The plaintiff alleges that neither the defendant nor Jupiter Entertainment obtained any license to air "Rocky Top," either properly from HOB or from UT. The plaintiff also alleges that the defendant "regularly licenses musical compositions and sound recordings for use in audio-visual works for broadcast on television and [] is aware of the need to do so." (Docket No. 1 at 4.)

**ANALYSIS**

The plaintiff claims that the defendant infringed on the copyright for the musical composition "Rocky Top" by airing "Rocky Top" on the defendant's television program without first obtaining a license. The defendant has requested that the court take judicial notice of "Rocky Top" and the Episode, and the defendant has also moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that its use of a brief snippet of "Rocky Top" is "fair use" as a matter of law.

**I.    Judicial Notice**

As indicated above, the defendant has requested that the court take "judicial notice" of the Episode and the musical composition "Rocky Top." (Docket No. 5.) In conjunction with this request, the defendant submitted the Episode, the sheet music for "Rocky Top," and a vocal performance of "Rocky Top" by the Osborne Brothers. (Docket Nos. 5, 10.)

Federal Rule of Evidence 201 deals with judicial notice and states that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

The plaintiff focuses its objections to the defendant's request for judicial notice on the Episode, as opposed to "Rocky Top." (Docket No. 16 at 3.) Specifically, the plaintiff objects to the court's taking judicial notice of the Episode because, obviously, the contents of the Episode

are not generally known and, moreover, the accuracy of the source of the Episode can "reasonably be questioned," because what purports to be the Episode has been provided by the defendant. (*Id.* at 4-6.) The defendant has attempted to quell any concerns about the authenticity of the Episode by submitting affidavits from defense counsel (Docket No. 11) and from the Records Custodian for the defendant (Docket No. 20), both of which swear to the authenticity and accuracy of the material submitted.[2]

The nub of the issue here, of course, is that the defendant would like the court to consider these materials, none of which were attached to the plaintiff's Complaint, without the defendant's Motion to Dismiss being converted into a Motion for Summary Judgment. Indeed, under Federal Rule of Civil Procedure 12(d), if "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed R. Civ. P. 12(d).

However, under certain circumstances, material "that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (internal citations and quotations omitted)(discussing "documents" not attached to the complaint, but not limiting the potential scope of the rule thereto). This occurs when material "is referred to in the complaint and is central to the plaintiff's claim. . . . In such event, the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the [material] does not

---

[2] The Records Custodian does state that a "time code" was added to the copy of the Episode that was submitted to the court "to permit easy reference to any scene or element in the program." (Docket No. 20 at 1-2.)

require conversion of the motion to one for summary judgment." *Id.* The Sixth Circuit has also noted that "a defendant may introduce certain pertinent documents if the plaintiff fails to do so. . . . Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

In light of this case law, then, much of the discussion of the propriety and the machinations of judicial notice here is misplaced. The plaintiff repeatedly eluded to the Episode and to "Rocky Top" in its Complaint, and it is clear from the Complaint that these materials are "central" to the plaintiff's claim and that the interpretation of those materials will be dispositive. However, the plaintiff did not attach a copy of the Episode or "Rocky Top" to its Complaint. Based on the case law above, absent any authenticity concerns, the court is, therefore, free to consider these materials as submitted by the defendant in conjunction with the defendant's Motion to Dismiss. *Greenberg*, 177 F.3d at 514.

As indicated above, the plaintiff argues that there are authenticity concerns because "neither the plaintiff nor the Court has any way to assess the accuracy" of the Episode, that is, the court and the plaintiff have no way to know, for sure, that the episode that the defendant claims to be the version of "Phantom Hitman" that aired on television is the version that actually aired. (Docket No. 16 at 6.) The plaintiff claims that it attempted to "find a commercially available copy of 'Phantom Hitman' but was unable to do so," and, therefore, the plaintiff should be able to take "discovery into the history, creation and production of [the episode submitted by the defendant] from defendant itself and should not be forced to rely on the *ipse dixit* statements of counsel." (*Id.*

at 5-6.)

The plaintiff has offered nothing but pure speculation to challenge the authenticity of the submission. The court has reviewed the Episode, as submitted, and there is nothing that suggests the Episode has been doctored in any substantive way. Additionally, two affidavits have been filed swearing to the authenticity and accuracy of the Episode. Absent anything other than pure speculation as to the veracity and integrity of the submission, there is no reason for the court not to consider it in conjunction with the defendant's Motion to Dismiss.

## II.   Standard of Review (Motion to Dismiss)

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal

conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

### III. Copyright Infringement Claim

As indicated above, the plaintiff's entire Complaint is premised on copyright infringement. The elements of a copyright-infringement claim are (1) ownership of the copyright by the plaintiff and (2) copying by the defendant. *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 581 (6th Cir. 2007). The defendant does not seriously challenge either element.[3] Indeed, the defendant does not dispute that a portion of "Rocky Top," as played by the UT band at a home football game, can be distinctly heard for about six seconds during the Episode and that "Rocky Top" continues in the background of the Episode for another six seconds or so after that. (Docket No. 7 at 4.) The defendant also does not dispute that it did not obtain a license to use "Rocky Top" prior to airing the Episode. The defendant contends, instead, that it is entitled to prevail on this motion based on the defense of fair use. (*Id.*)

#### A. Fair Use

The "purpose of the fair use doctrine is to ensure that courts avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed

---

[3] In footnotes in both its Memorandum in Support of its Motion to Dismiss and in its Reply in Support, the defendant speculates that the plaintiff, as administrator, may not have standing to sue for copyright infringement here. (Docket No. 7 at 2; Docket No. 21 at 1.) The defendant provides no Sixth Circuit case law in support of its speculation and explicitly "assume[s] *arguendo* that Plaintiff could prove standing." (Docket No. 7 at 2.)

8

to foster." *Zomba Enters*, 491 F.3d at 581 (internal quotation omitted). Section 107 of the Copyright Act provides that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.

Section 107 also instructs a court to consider four factors in analyzing a claim of fair use: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Id.*

Whether a defendant's use was "fair" ultimately involves a "case-by-case" determination guided, non-exclusively, by the four factors discussed above. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549 (1985). The "ultimate test of fair use is whether the copyright law's goal of promoting the Progress of Science and useful Arts would be better served by allowing the use than by preventing it." *Bill Graham Archives v. Dorling Kindersley, Ltd.*, 448 F.3d 605, 608 (2nd Cir. 2006)(internal quotation omitted).

    **1.**  **Purpose and character of use**

In evaluating the purpose and the character of the use of the work at issue, the court considers two main points: (1) whether the new work is "transformative" and (2) whether the new work is "for commercial or noncommercial purposes." *Zomba Enters*, 491 F.3d at 582. While there is no dispute that the Episode was made for commercial purposes, given that much of the creative work performed in this country is done for commercial purposes, this second point tends

9

to take on less significance, especially when the new work is highly transformative. *See id.* In considering whether a work is "transformative," the court should explore whether the new work "merely supersedes the objects of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)(internal citation and quotation omitted).

The defendant claims that its use of "Rocky Top" constitutes "criticism, comment, [or] news reporting" under Section 107, as demonstrated by the "transformative" use to which "Rocky Top" is put in the Episode. (Docket No. 7 at 8.) Specifically, the defendant contends that "the brief use of the song 'Rocky Top' merely illustrates an aspect of the culture of Knoxville, Tennessee and the experience of attending a UT football game [in Knoxville]," that the "song appears in the [Episode] as just one of many elements of a larger factual report about the city," and that "recording background noise at the football game was necessary for the documentary filmmakers to accurately portray the atmosphere in and around Knoxville at the time of the factual events portrayed in the [Episode]." (*Id.* at 8-9.)

The defendant also argues that, while no words from "Rocky Top" are heard in the Episode, "the use of the song 'Rocky Top' in the [Episode] serves as a commentary upon the very notions presented by the song itself." (*Id.* at 9.) That is, while "Rocky Top" portrays East Tennessee as a "quaint, backwoods" region, the Episode's discussion of Knoxville's development and the city's intense support for UT football "negate the image the song portrays of East Tennesseans." (*Id.*) Moreover, the defendant argues, the cheerful sound of "Rocky Top" provides

"a stark contrast" to the criminal events that are the subject of the Episode. (*Id.*) In sum, the defendant argues that its purpose in using "Rocky Top" was transformative in the sense that it used "Rocky Top" to comment on the lyrics and to incorporate "Rocky Top" into a "larger creative whole" about the city of Knoxville. (Docket No. 21 at 7-8.)

In response, the plaintiff argues that there is no clear connection between "Rocky Top" and the rest of the Episode; that is, a snippet of "Rocky Top" simply plays in one scene of the Episode, with no discussion, commentary or criticism of "Rocky Top." (Docket No. 17 at 11.) The plaintiff also contends that the defendant has, in fact, not added anything to "Rocky Top" at all; rather, it has simply played a portion of "Rocky Top" in the Episode. (*Id.*) Moreover, the plaintiff argues, because only the instrumental portion of "Rocky Top" is played in the Episode, it defies logic to argue that the Episode is somehow commenting on words and ideas from "Rocky Top" that are never actually stated in the Episode. (*Id.*)

Both parties point to the *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310 (S.D.N.Y. 2008) case in support of their position. In that case, individuals associated with the estate of John Lennon sued the producers of the movie *Expelled*, claiming that the movie infringed on their copyright in Lennon's world-famous song "Imagine," because the movie producers used about 15 seconds of that song in the movie, including certain lyrics, without first obtaining a license. *Id.* at 320. Specifically, at the relevant point in the movie, the narrator is discussing the dangers posed by modern scientists who advocate that society abandon religion. *Id.* at 317-18. Just before the excerpt from "Imagine" is played, the narrator states that these views are not new, and modern scientists who advocate them are "merely lifting a page out of John Lennon's songbook." *Id.* At

11

this point, "Imagine," specifically the lyrics "nothing to kill or die for and no religion too," plays while "four brief sequences of black and white footage run. The first sequence features a group of children in a circle; the second is a sequence of a young girl spinning and dancing; the third sequence is of a military parade, which gives way to a close up of Joseph Stalin waving." *Id.*

The *Lennon* court found, clearly, that this use of "Imagine" was transformative because "the movie incorporates an excerpt of 'Imagine' for purposes of criticism and commentary. . . . The movie [] uses the excerpt of 'Imagine' to criticize what the filmmakers see as the naivete of John Lennon's views." *Id.* at 322-23. Importantly, in forming this opinion, the court relied on a viewing of the movie and on declarations from the producers of the movie who provided their rationale for using "Imagine," and, therefore, "ease[d]" the finding of transformative use for the court. *Id.*

Here, because the defendant seeks the dismissal of the plaintiff's Complaint without the benefit of discovery, there is nothing to "ease" the court's task of finding a transformative use. Moreover, in contrast with *Lennon*, the transformative nature of "Rocky Top" is unapparent from a basic viewing of the Episode. In the Episode, there is no allusion to "Rocky Top" prior to its playing, and there is no perceptible attempt to actually place "Rocky Top" in any sort of larger context. As indicated above, just before "Rocky Top" plays, there is a general discussion of UT being a haven for college football, but there is no commentary, criticism or even discussion of "Rocky Top." Rather, basically, the excerpt from "Rocky Top" simply plays, fades, and then stops, and the Episode moves on to the next topic.

While affidavits or declarations from the producers and the directors of the Episode could,

as they did in *Lennon*, aid the court in identifying the transformative aspect of the use, the unsupported arguments of defense counsel, as presented in the briefing here, ring hollow and, frankly, inconsistent with the actual Episode. A viewing of the Episode simply does not indicate that the individuals responsible for the Episode wished to comment on the lyrics of "Rocky Top" or that they wished to use that song to make a larger point about Knoxville.

Other than the *post facto* interpretations of defense counsel, the court has no evidence as to what motivated the makers of the Episode to use "Rocky Top" at this point in the Episode. In the Episode itself, there is little to suggest a transformative use. As the use here is commercial and, at least at this stage, non-transformative, the first Section 107 factor weighs against a finding of "fair use."

### 2. Nature of the copyrighted work

Both parties recognize that this factor, although certainly not dispositive, weighs against a finding of "fair use." The Supreme Court has found that "some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. As the defendant concedes, "the copyrighted work at issue in this lawsuit is a musical composition. It is well-settled that compositions of songs 'fall within the core of the copyright's protective purposes.'" (Docket No. 7 at 10 citing *Campbell*, 510 U.S. at 586). The Court has cautioned, however, that, inevitably, publicly known, expressive works will be used and, in many cases, this use will be fair. *Campbell*, 510 U.S. at 586. Therefore, while this factor weighs in favor of the plaintiff and against a finding of fair use, this factor does not significantly tip the balance.

### 3. The amount and substantiality of the portion used

This factor focuses on the amount of the allegedly infringed work (here, "Rocky Top") that was taken by the alleged infringer. *Zomba Enters*, 491 F.3d at 583. On a general level, "the larger the volume of what is taken, the greater the affront to the interests of the copyright owner, and the less likely that a taking will qualify as a fair use." *Id.* (internal quotation omitted).

That said, the court should consider both the "quantity" and also the "value" of the materials taken, that is, the court should consider whether the amount taken was "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. As the Supreme Court has recognized, consideration of this factor requires that the district court, to some degree at least, "harken back to the first of the statutory factors, for, as in prior cases, we recognize that the extent of permissible copying varies with the purpose and character of the use." *Id.* at 586-87. This brand of analysis preserves the notion that a small but unfair use is still an infringement, and that a necessary use of a substantial portion of a work may very well still be a fair use. *See Reingold v. Black Entertainment Television*, 126 F.3d 70, 80 (2nd Cir. 1997).

The defendant argues that this factor "weighs heavily" in its favor because, during the Episode, only twelve seconds of "Rocky Top" are used, and, for roughly half of that time, the song is somewhat "obscured by crowd noise and the narrator of the documentary." (Docket No. 7 at 11.) The defendant claims that the brevity of the use indicates that the creators of the Episode "used only so much of 'Rocky Top' as was necessary to help establish the background for a factual documentary." (*Id.* at 13.)

In response, the plaintiff emphasizes that the use of only a relatively small portion of a

copyrighted work does not preclude a claim for copyright infringement and also notes that, in *Lennon* for instance, the court had the benefit of musicological experts to aid in the determination of whether the movie producers had taken a "significant portion" of "Imagine*.*" (Docket No. 17 at 14 citing *Lennon*, 556 F. Supp. 2d at 326.) That is, the plaintiff argues that, by making its motion before any discovery could be conducted, the defendant seeks to avoid an informed inquiry into the qualitative value of the material taken. (*Id*.)

While it is true that the Episode uses a relatively brief snippet of "Rocky Top," this factor only weighs slightly in the defendant's favor. Again, at least at this stage in the proceedings, the court finds any claim of "transformative" use to be unavailing, which, as discussed above, weakens the strength of the defendant's argument on this third factor. Moreover, the twelve-second excerpt from "Rocky Top" that plays in the Episode contains at least a portion of the more famous and well-known chorus of the song – a point that weakens the defendant's argument that the amount of the song that was taken was somehow insubstantial. Therefore, while a relatively small portion of the song is played in the Episode, this point alone hardly establishes that the defendant is entitled to the dismissal of the plaintiff's Complaint on fair use grounds.[4]

---

[4] In passing, the defendant claims that its use of "Rocky Top" may be *de minimis* and, therefore, not an infringement at all. (Docket No. 7 at 11.) The defendant cites the *Gordon v. Nextel Communications and Mullen Advertising, Inc.*, 345 F.3d 922 (6th Cir. 2003) case in support of this notion. *Gordon* emphasizes that a claim of *de minimis* use should be advanced separate from a fair use argument, which the defendant has not done here. *Id.* at 924. More to the point, *Gordon* involved a claim of copyright infringement as to a series of drawings that were used in a commercial. *See generally id.* The Sixth Circuit examined whether the commercial's use was *de minimis* by looking "to the amount of the copyrighted work that was copied, as well as the observability of the copyrighted work in the allegedly infringing work." *Id.* The court concluded that the use was *de minimis* because the illustrations, as used in the commercial, were "fleeting," "out of focus" and often only used as "distant background." *Id.* at 924-25. Here, "Rocky Top" can be plainly be heard for twelve seconds of the Episode, and the song is the only

## 4.     Effect on the potential market for the copyrighted work

The final Section 107 factor considers the effect of the copying on the market for the original work. *Zomba Enters*, 491 F.3d at 583. The Sixth Circuit has clearly established that, where, as here, "the copying at issue is commercial in nature, the alleged infringer bears the burden of proving . . . that its copying does not adversely affect the market value" of the plaintiff's copyrights. *Id.*

In similar cases to this one, the evidence presented as to this factor will often focus on "the effect on the potential market for *licensing* of the relevant musical compositions." *Id.* (emphasis added). That is, where "the copyright holder clearly does have an interest in exploiting a licensing market and especially where the copyright holder has actually succeeded in doing so," the fact that the defendant's use deprived the plaintiff of licensing revenues it would have otherwise received is relevant to the fair use analysis. *See id.*; *Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1387 (6th Cir. 1996).

The defendant simply ignores this line of controlling case law and relies on a decision that it terms "leading" from the Eastern District of New York. (Docket No. 21 at 12 citing and quoting *Hofheinz v. AMC Productions, Inc.*, 147 F. Supp. 2d 127, 140 (E.D.N.Y. 2001)).[5] In *Hofheinz*, the court implied that the relevant consideration under the fourth factor is whether the infringement would impact the primary market for the "infringed works themselves," not whether the

---

sound that can be heard on the Episode for 6-7 seconds. "Rocky Top" is certainly "observable" in the Episode, and, therefore, at this stage, the defendant's meekly advanced claim of *de minimis* use fails.

[5]*Hofheinz* has not been cited by any court in more than six years and has only ever been cited by the district court for the Southern District of New York.

infringement would have an impact on "the [plaintiff's] ability to license those works in the future."[6] While the defendant does recognize that courts have allowed consideration of the impact on the licensing market, the defendant argues that, because the Episode is "transformative," there can be no relevant impact on the licensing market. (Docket No. 7 at 13; Docket No. 21 at 12., citing, among others, *Bill Graham Archives*, 448 F.3d at 615)("a copyright holder cannot prevent others from entering fair use markets merely by developing or licensing a market for parody, news reporting, educational or other transformative uses of its own creative work.")(internal quotation omitted)

The plaintiff correctly argues that, at this stage, the court must accept as true the plaintiff's allegations that it regularly licenses "Rocky Top" and that allowing this type of infringement to go unpunished would harm the plaintiff's licensing market. (Docket No. 17 at 15.) Moreover, the plaintiff responds that the defendant was not attempting to enter new, fair use markets through this clip; rather the "defendant used the clip [of] 'Rocky Top' in precisely the same manner HOB would seek to license it: by synchronizing it with an audiovisual program, including such a program depicting the UT football team." (*Id.* at 16.) The plaintiff contends that "if every potential licensee could use 'Rocky Top' any time the state of Tennessee, Knoxville or UT were mentioned," on a theory that the potential licensee was somehow exploiting a new "fair use" market, "HOB's licensing ability would be completely eroded." (*Id.*)

The defendant has clearly failed to carry its burden on this element. Under settled Sixth

---

[6]It is worth noting that the Second Circuit rejected this position four years earlier, concluding that the fourth factor favors the party alleging infringement if that party can show a "traditional, reasonable, or likely to be developed market for licensing her work." *Reingold*, 126 F.3d at 81.

Circuit case law, the plaintiff is entitled to argue that the defendant's conduct has damaged its ability to license the song, and the court has already concluded that the defendant has not sufficiently shown that the Episode is transformative. Therefore, an analysis of the fourth element, at least at this stage, counsels against a finding of fair use.

**5.     Summary**

At this stage, a finding of fair use as a matter of law would be inappropriate. That said, nothing precludes the defendant from re-asserting the fair use defense at the summary judgment stage. At that point, more information will be available about the transformative nature of the use, the substantiality of the allegedly infringed work that was used, and the impact on the potential licensing market.

## CONCLUSION

For the reasons discussed above, the defendant's request to have the court consider the Episode and "Rocky Top" at this stage of the proceedings was entirely appropriate. However, consideration of those materials demonstrates, at least at this stage, that dismissal of the plaintiff's copyright infringement claim on fair use grounds would be improper, and, therefore, the defendant's Motion to Dismiss will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge